## WILLIAMS v. MOWER.

1. Findings of fact by a jury on issues ordered out of chancery, confirmed by the Circuit Judge, approved.
2. In directing payment by the administrator of a deceased executor to the surviving executor, such administrator was properly permitted to retain his intestate's share of the testator's estate.
3. While it is competent to introduce declarations of a party against his interest, his declarations in his own favor may not be introduced, unless they were made in conversations previously testified to in behalf of the other side, and constituted a part thereof. This case distinguished from *Administrators of Darby* v. *Rice,* 2 Nott & McC., 596.
4. An executor may show unintentional errors and mistakes in the inventory sworn to by him, and claim a correction accordingly ; but where an executor intentionally suppresses a part of the assets from the inventory, or silently acquiesces in such suppression by his co-executor, the law will not permit him afterwards, for his own advantage, to supply such omission—not even as against his co-executor participating in the fraud.
5. A surviving executor may not testify to conversations or communications between himself and the deceased executor affecting their liability to each other for the administration of testator's estate.

6. *Standridge* v. *Powell*, 11 S. C., 549, stated and explained.
7. A judge should not charge a jury that they must "decide what the law is." But where it is apparent that this remark was inadvertently made, and the entire charge was such that the jury could not possibly have been misled by it, there is no ground for a new trial.
8. Case remanded for the determination of a question not considered in the court below.

Before NORTON, J., Newberry, December, 1887.

After stating the case, the Circuit decree was as follows:

After the findings of the jury as above, the whole case was heard by me. I am satisfied that there has been no settlement and division of the estate of John H. Williams, deceased, between James W. Williams and Robert G. Williams, and that Robert G. Williams has received no part of the eight thousand dollars entered in the inventory as "cash on hand, United States bonds and railroad stocks," except the one thousand dollars of railroad stocks, leaving seven thousand dollars of said sum in the estate of James W. Williams, deceased, subject to accounting between them. I also concur with the finding of the jury on the fourth issue submitted, which relates to the individual indebtedness of Robert G. Williams to the estate of James W. Williams, deceased, there being no legal proof of such indebtedness.

I further adjudge that James W. Williams received five thousand dollars belonging to the estate of J. H. Williams, deceased, with which he has not charged himself. The testimony of certain witnesses for the plaintiff on this point is positive and conclusive of the matter, if those witnesses are to be believed. If I had not had the assistance of the jury, I would have found differently, but as I do not know the character and standing of the witnesses, and the jury did know, I gladly avail myself of their assistance. The court has asked their assistance in reaching a conclusion on these facts. The question of the veracity and intelligence, of the good and bad qualities of the witnesses generally, is peculiarly within the province of the jury. That is one of the points upon which the court is most anxious to receive their aid. So that yielding to the advice that the jury has given, I assume that the testimony of these witnesses is true, which tes-

timony is utterly inconsistent with the theory that the five thousand dollars is included in the eight thousand dollars entered in the inventory. I rely upon the judgment of the jury as to the credibility of these witnesses; and taking their testimony, with all other circumstances of the case, I find that the five thousand dollars in question was no part of the eight thousand dollars in the inventory.

In connection with this question, the defendant's counsel, in argument, make the point that the plaintiff is estopped by the inventory from proving that there are other assets of the estate not embraced therein. I do not so think ; on the contrary, hold that it is competent to prove that there are other assets which had been left out of the inventory. And in the absence of proof as to why they were omitted, the court would assume that even if known of beforehand, it was through temporary forgetfulness of the circumstances; and that in the particular circumstances of this case, it was not thought necessary for the parties to alter the inventory. They had their private agreement. They two were the only persons concerned in the estate. There were no creditors, the special legacies were paid, and no one in the world had any interest in the knowledge to be furnished by the inventory, except these two parties, between whom, as appears from the evidence, there was an understanding in regard to the five thousand dollars.

I find that the fund on deposit with George W. Williams & Co. (one thousand and fifty-four 04–100 dollars), together with interest thereon from the date of deposit, February 21, 1873, to the date of the inventory, the　　day of August, 1876, at the rate of seven per cent. per annum, was embraced in and a part of the eight thousand dollars entered in said inventory as "cash on hand, United States bonds, and railroad stock."

In the settlement to be had in the Probate Court with the administrator of James W. Williams, deceased, the said administrator shall not be required to turn over to the plaintiff the share of the estate of John H. Williams, deceased, to which the estate of James W. Williams is entitled, but it shall be sufficient for the said administrator to acknowledge receipt thereof to the plaintiff in such manner as to relieve the surviving executor thereof.

It is therefore ordered, adjudged, and decreed, that the decree of the probate judge, appealed from, be and the same is hereby modified in accordanae with the views herein announced, and in other respects affirmed, and that this decree be certified by the clerk of this court to the Probate Court.

. *Messrs. Moorman & Simkins,* for plaintiff.

*Messrs. Jones & Jones,* and *Y. J. Pope,* for defendant.

October 9, 1888.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   John H. Williams, having duly made and executed his last will and testament, departed this life on the 2nd of June, 1876.   By his will, after some pecuniary legacies and a specific devise to his grandchildren, he gave the larger portion of his estate to his two sons, the plaintiff and the defendant's intestate.   These two sons, Robert G. Williams and James W. Williams, were appointed executors and they duly qualified as such, and in August, 1876, made and returned into the proper office an inventory and appraisement of the personal estate of their testator, under which the principal questions in this case arise, and which will be more particulaily referred to hereinafter.

On the 9th of August, 1883, "after the greater portion of the testator's estate had been disposed of, according to the direction of the will," James W. Williams died intestate, and the defendant, George S. Mower, administered upon his personal estate, and on the 3rd of July, 1884, this proceeding was commenced in the Court of Probate, and carried thence by appeal to the Court of Common Pleas.   The object of the proceeding was to obtain from the defendant an account of the proceedings of his intestate as executor of John H. Williams, upon the allegation that he was the sole managing executor, and that a considerable portion of the personal estate of the testator remained in his hands, at the time of his death, unadministered, to which the plaintiff alleged that he was entitled both as surviving executor and as legatee, and that for the purpose of ascertaining the amount of such unadministered assets, the account demanded was necessary.

The defendant by his answer denied that his intestate assumed

the exclusive management of the estate; stated that he had no knowledge as to how far the testator's estate had been settled; submitted that if it be ascertained that the estate of the testator has not been fully administered and settled, that he, as administrator of James W. Williams, would be entitled to recover and hold whatever might be found to be the share of said James W. in the unadministered assets of the estate of the testator, and that the plaintiff should be required to account for his administration of testator's estate, praying that the plaintiff might be required to pay over to him, as administrator as aforesaid, whatever amounts might be found due to his intestate's estate by the plaintiff as executor or individually, and that he might be entitled to retain his intestate's share in the estate of the said John H. Williams.

It seems that the first item on the inventory and appraisement, as returned by the executors, was "cash on hand, United States bonds, railroad stocks, $8,000," and the main questions in the case were: 1st. How much of that sum was received by each executor respectively. 2nd. Whether a certain sum of $5,000, alleged to have been received by the intestate, James W. Williams, was included in the $8,000 mentioned in the appraisement. 3rd. Whether another sum of $1,417, received by James W. Williams from George W. Williams & Co., was a part of the $8,000 mentioned in the inventory. 4th. Whether the plaintiff, as an individual, was indebted to his deceased brother, James W. Williams. By order of the Circuit Court issues were framed, embracing these four questions, and submitted to a jury who found as follows: 1st. That the said sum of $1,417 was a part of the $8,000 mentioned in the inventory. 2nd. That James W. Williams received of the said $8,000, seven thousand dollars in cash, and the remaining one thousand dollars was received by Robert G. Williams, "in railroad stock and United States bonds." 3rd. That James W. Williams did receive the sum of $5,000, not included in the inventory, with which he has not charged himself in his returns as executor. 4th. That the plaintiff is not, as an individual, indebted to the estate of defendant's intestate.

The Circuit Judge concurred in the findings of the jury, and rendered judgment accordingly, and he also adjudged that, "In

the settlement to be had in the Probate Court with the adminis-
trator of James W. Williams, deceased, the said administrator
shall not be required to turn over to the plaintiff the share of the
estate of John H. Williams, deceased, to which the estate of
James W. Williams is entitled, but it shall be sufficient for the
said administrator to acknowledge receipt thereof to the plaintiff
in such manner as to relieve the surviving executor thereof."
From this judgment both sides appeal upon the several grounds
set out in the record, which we need not repeat here, as we pro-
pose to state and consider the several questions substantially
raised by the several grounds of appeal in various forms.

The plaintiff's first ground of appeal assails the finding in ref-
erence to the $1,417 being embraced in the inventory. This, as
it seems to us, is a question of fact, and in the face of the finding
of the jury, concurred in by the Circuit Judge, we can see no
ground for disturbing the judgment below.

The plaintiff's second ground of appeal imputes error to the
Circuit Judge in directing that in the settlement in the Probate
Court, the defendant shall not be required to turn over to the
plaintiff the share of his intestate in the estate of the testator,
but that it shall be sufficient for him to receipt for the same. The
manifest object of this provision of the Circuit decree was to ren-
der unnecessary the useless ceremony of paying over with one
hand, and immediately receiving the same sum with the other
hand. It seems to us that the evils suggested in the argument
of plaintiff's counsel cannot arise under the terms of the decree
above copied. Before the share of the intestate can be ascer-
tained, all the proper expenses of administering the estate of the
testator would first have to be provided for. So, too, if there are
any outstanding debts legally due by the estate of the testator
(although it is distinctly stated in the "Case" that there are none),
these also would have to be provided for before the shares of
either party could be ascertained; and it will be observed that
the decree does not direct, as seems to be assumed in the argu-
ment, that *one-half* of the amount found to be due by the estate
of defendant's intestate to the estate of the testator shall be
retained by the defendant, but that *the share* of defendant's intes-
tate in the estate of the testator shall be retained by defendant.

22

So that it is clear that the difficulties suggested in the argument are sufficiently provided against by the terms of the decree. We do not think, therefore, that either of the grounds of appeal submitted by the plaintiff can be sustained.

We come then to the defendant's grounds of appeal. The first and second grounds present the question as to the admissibility of the declarations of James W. Williams, made to witnesses verbally, and by entries in his memorandum, to rebut and explain other declarations made by him and introduced by plaintiff. The general rule upon this subject is, that while it is competent to introduce declarations of a party against his interest, it is not competent to introduce his declarations in his own favor, unless they were made in, and constituted a part of, the conversation brought out by the other side; and this we understand to have been the ruling of the Circuit Judge, in which we think there was no error. Counsel for the defence has cited the case of the *Administrators of Darby* v. *Rice* (2 Nott & McC., 596), to sustain these grounds, but we do not think that case is in point. There the contest was as to whether the apparent balance on an account had been paid. A witness who had received some money from the deceased, Darby, immediately took the same money in bills to the store of the defendant to pay an account which he owed him, and as soon as defendant saw the bills he remarked to the witness, "You got that money from Darby," and this, with other circumstances, was relied upon to show payment. The question was, whether the remark of defendant above quoted was competent evidence, and it was held that it was, for the purpose of proving the fact that defendant immediately recognized the bills, as that fact was not susceptible of proof in any other way.

The third, fourth, twelfth, and thirteenth grounds present substantially the question whether the inventory, signed and sworn to by the plaintiff, was so conclusive as to estop him from showing any errors or mistakes therein. Upon this question we are cited to no authority, nor are we aware of any which will sustain the broad proposition that an inventory of his testator's estate, returned by an executor, is so absolutely conclusive as to estop him from showing unintentional errors or mistakes therein. It is true, the law requires that an executor shall make a full and

complete inventory of the personal estate of his testator—to use the language of the statute, "an exact inventory"—and his oath binds him to the performance of this duty, but still, the law, recognizing the infirmities and imperfections of human nature, does not expect or require absolute perfection. It recognizes the liability of the best and most careful persons to make mistakes and omissions, and therefore we cannot say that an inventory returned under oath by an executor is so absolutely conclusive against the executor as to preclude him from offering evidence to show such errors. What may be the effect of intentional errors or omissions we will consider hereafter. It does not seem to us, therefore, that these grounds can be sustained.

The sixth ground imputes error to the Circuit Judge in finding that there had been no settlement and division of the estate of the testator between the two executors, and that the plaintiff had received no part of the eight thousand dollars mentioned in the inventory, except the one thousand dollars of railroad stock, leaving the remaining seven thousand dollars to be accounted for by the estate of James W. Williams. This presents simply a question of fact, and under the well settled rule, we see no reason for interfering with the conclusion reached by the Circuit Judge.

So, too, the eighth ground, which challenges the correctness of the finding below as to the individual indebtedness of the plaintiff to the defendant's intestate, raises only a question of fact. We agree with the Circuit Judge that there was no legal evidence of any such indebtedness.

The 9th and 10th grounds allege error in not excluding the testimony of Robert G. Williams as to communications and transactions between him and the intestate, under section 400 of the Code. We do not understand that the plaintiff was allowed to testify as to any transactions or communications with defendant's intestate except in reply, after it had been brought out on the cross-examination that certain payments had been made by the intestate to the plaintiff, when he was asked if any other payments had been made to him, and especially whether he had ever received any part of the five thousand dollars alleged to have been received by the intestate over and above the inventory, and

except perhaps when the plaintiff was allowed to testify that the intestate had the entire management of the estate, and that intestate alone furnished the information upon which the inventory was made out. We are, therefore, somewhat at a loss how to make these grounds the basis of any distinct ruling, as it does not very clearly appear what was the ruling below. But as the case has to go back, so far as one of the main points of controversy is concerned—as to the five thousand dollars—to which the testimony in question seems to have been mainly applicable, we will content ourselves with simply declaring in general terms our view of the matter.

These two brothers, the plaintiff and defendant's intestate, were co-executors of their father's will, and both equally charged with executing its terms, and, under the section of the Code above referred to, it was not competent for the survivor to testify to anything that, by word or act, passed between himself and his deceased brother. It seems to us, therefore, 'that unless the way was opened by a previous cross examination, it was not competent for the plaintiff to testify as to what portion of the assets he had or had not received from the deceased co-executor, or as to what passed when they went together to their attorney to prepare the inventory of the estate. The Circuit Judge seems to have misconceived the scope and effect of the decision in *Standridge* v. *Powell*, 11 S. C., 549. In that case the action was upon a note under seal by the assignee, and it was held that the maker of the note was competent to prove *the loss* of a receipt alleged to have been given him by the deceased assignor, upon the ground that the mere loss of the paper could not be regarded as either a transaction or communication between the witness and the deceased assignor, but it was at the same time held that the witness was not competent to prove *the contents* of the alleged receipt, as that was such a transaction. Counsel for the defence have referred us to certain portions of the testimony taken by the judge of probate, where the plaintiff was allowed to testify as to transactions and communications between himself and the intestate; but this testimony was taken subject to exceptions, and as it was not used in the trial before the Circuit Judge, where the trial was *de novo*, he did not and could not have made any ruling thereon.

The eleventh ground of appeal is based upon a remark made by the Circuit Judge in the outset of his charge to the jury, that they should "decide what the law is and what the facts are." While such a remark as this cannot be approved, yet it was manifestly a mere slip of the tongue, and was so fully and clearly corrected in the subsequent part of the charge, where it was forcibly impressed upon the jury that they must take the law from the court, and confine themselves exclusively to the facts, that we cannot think that the jury were misled. Indeed, the counsel themselves do not seem to have regarded this ground as worthy of serious consideration, as we do not find it alluded to in the argument.

The fifth, seventh, and fourteenth grounds of appeal on the part of the defendant present what we regard as the serious question in this case. If, when the inventory was made and returned by these two executors, the plaintiff either wilfully or intentionally suppressed and omitted therefrom the five thousand dollars alleged to be in the hands of his co-executor as a part of the assets of his testator's estate, or if he silently acquiesced in such suppression or omission, then, it seems to us, that upon the highest considerations of public policy and morality, the law will not permit him now, for his own advantage, to supply such omission. If this was done by these executors, it was a fraud upon the rights and interests of those whose interests were committed to their charge, and neither one of them can make such fraud the basis of any claim against the other, but the law will leave them as it found them. When they qualified as executors, it became their duty—their sworn duty—to make a full and complete inventory of the personal estate of their testator, and if they wilfully or even intentionally omitted from such inventory any portion of the assets of the testator, they violated their oath, and neither one of them can be permitted to claim the interposition of a court of justice to relieve them from the position in which they have voluntarily placed themselves. It is true that this may practically enure to the benefit of one who has also participated in the fraud, but this is the result in every case where one seeks relief from a fraud in which he has himself participated. The law affords relief to neither, but simply refuses its aid to both.

Now, as this question, which seems to us the vital and controlling question, at least so far as the five thousand dollars, with which it is proposed to charge the estate of the intestate, is concerned, does not seem to have been considered and determined in the court below, the case must go back for its decision. It is true that the Circuit Judge does say, in speaking of the omission of assets from the inventory: "In the absence of proof as to why they were omitted, the court would assume that even if known of beforehand, it was through temporary forgetfulness of the circumstances; and that in the particular circumstances of the case, it was not thought necessary for the parties to alter the inventory. They had their private agreement. They two were the only persons concerned in the estate. There were no creditors, the special legacies were paid, and no one in the world had any interest in the knowledge to be furnished by the inventory, except these two parties, between whom, as appears from the evidence, there was an understanding in regard to the five thousand dollars."

This language leaves us in some doubt whether the Circuit Judge based his conclusion that it was competent for the plaintiff to show that the five thousand dollars should be added to the inventory, because it was omitted through forgetfulness, or because these two executors, being the only persons interested in the estate, the omission, known to them both, could make no difference. If the former, there is not the slightest evidence to show that the omission was through forgetfulness, and, on the contrary, there is testimony tending to show that the omission was intentional, and for the purpose of enabling the intestate to make a more favorable settlement with the legatees for whom he was trustee; and this leaves no room for the assumption, "in the absence of proof," that the omission was the result of temporary forgetfulness, to say nothing of the fact that it is difficult to conceive how so large a sum should have been overlooked. But if, on the other hand, the judge's conclusion is to be regarded as based upon the fact that as these two executors were the only persons interested in the estate, the omission made no difference, then we cannot accept either the reasoning or conclusion of the Circuit Judge. The real question is, why was this large sum omitted at the time

the inventory was made, and at that time these executors were
not the only persons interested in the estate.    It could not then
be said, "there were no creditors," nor could it be said that "the
special legacies were paid," and we do not think that the fact that
these two executors were eventually the only persons interested
in the estate, would furnish a sufficient reason for omitting any
portion of the assets from the inventory.

It may be possible that in this particular case no harm was
intended and that none has resulted from the omission, but the
law must proceed upon general principles, which are alike appli-
cable to every similar case, and we think the safest and best prin-
ciple to lay down is that where an executor wilfully or intention-
ally omits from the inventory of his testator's estate any portion
of the assets of such estate, he cannot afterwards, for his own
advantage, supply such omission by falsifying his sworn return.
Whether this has been done in this case is the question which
must be referred to the Circuit Court for trial.

The judgment of this court is, that the judgment of the Circuit
Court be reversed, in so far as it holds the estate of defendant's
intestate liable for the five thousand dollars in addition to the
inventory, and that the question of such liability be referred back
to the Circuit Court for trial upon the principles herein announced,
and that in all other respects the judgment of the Circuit Court
be affirmed.