# Griffith's Adm'x et al. v. Miller et al.

March 11, 1941.

Rouse, Price & Adams for appellants.
Sidney Gaines and Walter D. Vest for appellees.

Opinion of the Court by Judge Ratliff—Reversing.

The appellants, who were plaintiffs below, brought this action in the Boone circuit court against appellees D. W. Miller and Fannie Smith Miller, his wife, and three infant children of D. W. Miller, seeking to recover of them on a note for $4,300 and to subject certain real estate to the payment of the note. The basic facts out of which this litigation arose are, in substance, these:

Lizzie E. Miller died testate in January, 1933, a resident of Boone County, Kentucky. By the terms of her will testatrix devised to the defendant, D. W. Miller, who·was a son of the testatrix, certain real estate, and it was provided in the will that he was not to sell the real estate during his lifetime, it being the object of the testatrix to insure him of a home during his lifetime and after his death if, for the best insurance of his family, if he should be married and have children, the land could be sold and the proceeds invested for the children until they reached legal age. We are not called upon to construe·the will with respect to the exact interest each devisee or class of devisees took. However, D. W. Miller and his children were invested by the will with some sort of a joint interest in the land.

About one year after the death of Lizzie E. Miller, J. O. Griffith, husband of plaintiff Mattie M. Griffith, died intestate, and Mattie M. Griffith qualified as administratrix of his estate. Mattie M. Griffith was a daughter of Lizzie E. Miller, deceased, and had qualified as executrix of her estate and thus became the representative of both estates—that of her deceased mother, Lizzie E. Miller, and of her deceased husband, J. O. Griffith.

In 1936 Mattie M. Griffith, suing individually and as administratrix of the estate of J. O. Griffith, deceased, and in behalf of her infant son, J. O. Griffith, Jr., filed their petition in equity, alleging that on November 12, 1932, Lizzie E. Miller and D. W. Miller executed and delivered to J. O. Griffith their joint promissory note for the sum of $4,300 payable to the order of J. O. Griffith, six months from date with interest at six per cent per annum. Plaintiff further pleaded her qualification as administratrix of the estate of her deceased husband, and that the note or any part thereof had not been paid

and was a just demand and that there was no set-off or discount against the same or any usury therein.

Plaintiff further alleged that she qualified as executrix of the will of Lizzie E. Miller, deceased, and that she had settled that estate and that the personal property was insufficient to pay funeral expenses and administration of the estate, leaving no personal property or other assets with which to pay the note sued on.

Plaintiffs further set out in their petition the devise of the real estate by the will of Lizzie E. Miller, deceased, to the defendants, and prayed judgment against them for the amount of the note with interest and that the land devised to the defendants be sold and the proceeds, or a sufficient amount thereof, be applied to the payment of the note, interest and cost of the action.

Defendants filed special and general demurrers to the petition and after same were overruled they filed their answer admitting that D. W. Miller signed the note as surety of his mother, Lizzie E. Miller, but denied that the note was executed or delivered on November 12, 1933, and denied the plaintiffs were the owners of the note or that it was a just claim, and denied certain other allegations to the petition.

In paragraph two, defendants alleged that sometime prior to the execution and delivery of the note, Mattie M. Griffith and her husband, J. O. Griffith, bought and sold corporate stock and other commodities on the stock market on margins and without any intention of paying the full value or receiving delivery of any of the stocks dealt in by them; that prior to the execution of the note Mattie M. Griffith and her husband induced Lizzie E. Miller to permit them to make certain stock deals for her, promising her large profits and returns from such deals. They further alleged that Lizzie E. Miller was the owner of certain stock of the Cincinnati, Newport and Covington Street Railway Company of value of approximately $800, and Mattie M. Griffith and her husband induced Lizzie E. Miller to transfer and deliver to them all of said stock which they sold and kept and used the proceeds thereof; that thereafter Mattie M. Griffith and her husband demanded of Lizzie E. Miller the sum of $5,000 claimed by them to be due and owing by Lizzie E. Miller to the stockbrokers by reason of losses in the stock deals made for her, but no part of same was paid

by Lizzie E. Miller at that time, but at the time of the execution of the note sued on, Lizzie E. Miller, believing that she was obliged to pay the $5,000, then paid to Mattie M. Griffith and her husband the sum of $700 in cash, and, together with the defendant, D. W. Miller as her surety, executed the note sued on for $4,300 payable to J. O. Griffith. They further alleged that there was no consideration for the note and same was contrary to the public policy of this state and is denounced by Sections 1955, 1956 and 1957 of the Kentucky Statutes and therefore null and void and of no binding force or effect between the parties thereto, or otherwise.

They further pleaded as "set-off" the Cincinnati, Newport and Covington Street Railway stock mentioned above, alleging same to be worth $800, and also the $700 which Lizzie E. Miller paid to them mentioned above. They further alleged that the plaintiff, Mattie M. Griffith, as executrix of the estate of Lizzie E. Miller, deceased, failed to inventory or otherwise list the note sued on as a liability of the estate of Lizzie E. Miller, deceased, and likewise failed to list or include same in her settlement as administratrix of the estate of J. O. Griffith as an asset thereof, and thereby failed and refused to recognize the validity or binding effect of the note in any respect and by her said acts and conduct she elected to treat the note as of no value whatever and waived all rights and benefits therein she might be entitled to as such personal representative, guardian, or individually. It is further alleged that the note sued on was not assessed for taxation and that no taxes of any kind have ever been paid on the note and pleaded and relied on such failure to list the note for taxation and the payment of taxes due thereon, as a bar to this action.

It was further alleged that the note sued on was executed and delivered to J. O. Griffith and accepted by him on the 13th day of November, 1933, which was on Sunday, and for that reason the note is unenforceable between the parties thereto.

Plaintiffs filed their reply to the answer and set-off, traversing the allegations thereof, and pleaded affirmatively that the note sued on was, in April, 1937, duly listed and assessed for taxation for the tax years 1934, 1935 and 1936, and the taxes paid.

Thereafter plaintiff filed an amended petition plead-

ing more fully her appointment and qualification as administratrix of the estate of J. O. Griffith, deceased, and alleged that the note sued on is an unadministrated asset of the estate of her decedent, J. O. Griffith, and further alleged that neither D. W. Miller nor his infant children as devisees of the will of L. E. Miller have any interest in the real estate devised to them until after the debts of the estate of Lizzie E. Miller, deceased, have been fully paid and discharged. They prayed judgment against D. W. Miller in the sum of $4,300, the amount of the note, with interest thereon and that the real estate in question, or so much thereof as may be necessary, be sold and the proceeds thereof applied to the payment of the debt, interest and cost of the action.

By amended reply plaintiffs alleged that on December 23, 1933, J. O. Griffith, D. W. Miller, and Fannie S. Miller signed this writing:

"This is to certify that Lizzie E. Miller and Dave Wallace Miller owe $4300.00 bearing 6% interest from November 12, 1932, to Jerry O. Griffith. This is part of money Jerry O. Griffith borrowed from the First National Bank of Covington for said Lizzie E. Miller.

"Dec. 23, 1933.

"J. O. Griffith

"Witness D. W. Miller

"Fannie Smith Miller"

Plaintiffs alleged that by reason of signing the above writing the defendants, D. W. Miller and Fannie S. Miller, are estopped to deny that the note arose out of a gambling transaction, or that it was executed on Sunday.

A number of demurrers, motions to strike, and motions to elect, etc., were made by the respective parties to the various pleadings, but it is unnecessary for us to determine the propriety or merits of them, since they are not insisted on in briefs of counsel, nor are they material to the merits of this case. Issue joined upon the pleadings indicated and the evidence taken by depositions and upon trial of the case the chancellor dismissed plaintiffs' petition. The judgment does not indicate which one, or how many, if more than one, of the various defenses offered by defendants the chancellor deemed sufficient to bar plaintiffs' claim.

If the note sued on constituted a binding obligation of Lizzie E. Miller and was such at the time of her death, and has not been paid, it cannot be denied that it constituted an indebtedness of the estate of Lizzie E. Miller to the estate of J. O. Griffith, and in that event the land devised to defendants may be subjected to the payment of such debt, since the defendants, devisees, merely took the place of heirs of Lizzie E. Miller. Sections 2084 and 2088 Kentucky Statutes; Section 434, Civil Code of Practice; Collett v. Helton et al., 264 Ky. 214, 94 S. W. (2d) 603.

Defendants first insist that plaintiffs have no right to sue upon the note or right of recovery thereon, even though it be conceded that it was originally a valid obligation as between Mrs. Miller and J. O. Giffith. Mattie M. Griffith's appointment and qualification as administratrix of the estate of J. O. Griffith, deceased, is properly pleaded in her petition and various amended petitions, which is not denied.

It appears that Mattie M. Griffith filed a settlement of her accounts as administratrix, but it does not appear that she had been discharged or that the trust had been terminated. She was still administratrix of the estate when she instituted this action in behalf of the estate of her decedent and the distributees thereof, and she alleged that the note sued on was an unadministered or unsettled asset of the estate. The trust imposed upon the administratrix was and is a continuing one until final settlement of the estate, and it was her duty to collect all valid debts and obligations due the estate of her decedent. Stratton's Adm'x v. Farmer, 194 Ky. 782, 240 S. W. 741.

It is insisted by defendants that since the plaintiff was administratrix of her deceased husband's estate and executrix of her deceased mother's estate, it was her duty to inventory the note sued on and list it as a liability of the estate of her deceased mother, and as an asset of the estate of her deceased husband, and since she failed to do so she thereby treated it as a nullity, or of no binding effect and is now barred from maintaining an action thereon, as representative of the estate of her deceased husband, or in behalf of herself and infant son as distributees. While her conduct in failing to inventory or list the note as a liability or asset of the re-

spective estates she represented was rather unusual, yet so long as the trust imposed upon her as administratrix of the estate of her deceased husband was continuing and in force, and since the note represented an outstanding asset of the estate of her deceased husband, the mere failure to inventory or list the note, as alleged by defendants, does not now render it a nullity, or bar plaintiff from maintaining her action to enforce payment.

In reference to the contention that the note was executed on Sunday, November 13, the evidence does not satisfactorily show whether it was executed on that day or the day previous. According to the evidence of D. W. Miller and his wife, the note was signed on Sunday, November 13. However, it is dated November 12, and the writing subsequently signed by defendants, D. W. Miller and his wife, states that the indebtedness it purported to acknowledge was for "$4,300 bearing interest from November 12, 1932." Be this as it may, however, and conceding, without deciding, that the note was executed on Sunday, such defense is not available to defendants without first restoring, tendering or offering to restore the consideration. Greene v. Southworth, 2 Ky. Law Rep. 233; Hale v. Harris, 91 S. W. 660, 28 Ky. Law Rep. 1172, 5 L. R. A., N. S., 295.

In reference to the contention that the alleged indebtedness resulted from gambling transactions, we find no merit in that contention. The defendant, D. W. Miller, alleged in his answer that the stock transactions out of which the indebtedness arose were bought and sold on margins and it is so shown by a member of the brokerage firm who testified as a witness for defendants. Buying stock on the margin simply means the purchaser pays part of the purchase price and the stock certificates are issued and held by the seller as collateral for the unpaid balance. This is a commonly known and recognized method of dealing in stocks, and is not prohibited as gaming transactions denounced in Section 1955, Kentucky Statutes. Bass v. Simon, 241 Ky. 666, 44 S. W. (2d) 587.

In reference to the plea of payment, we do not think the evidence is sufficient to sustain that contention. Defendants base that contention upon certain figures taken from Lizzie E. Miller's account with W. E. Hutton and

Company, the stockbrokers. We do not think, however, that the items and figures relied on, which are set out in the record, are sufficient to establish payment of the note. Defendants contend that the broker's account shows that Mrs. Miller was never indebted to the stockbrokers in any sum exceeding $4,625.84 and for that reason she did not borrow or authorize J. O. Griffith to borrow for her, the sum of $5,000 to pay an indebtedness of $4,625.84. But these figures do not prove that she did not recognize her obligations to reimburse J. O. Griffith for the $5,000 he borrowed for her benefit. It is shown by the uncontradicted evidence of Mattie M. Griffith, officers of the First National Bank and Trust Company, of Covington, and the bookeeper for W. E. Hutton and Company, that Mattie M. Griffith and J. O. Griffith informed Mrs. Miller that owing to the slump in the stock market she, Mrs. Miller, would have to raise $5,000 or perhaps lose her stock; that J. O. Griffith applied to the bank mentioned above for a $5,000 loan to Mrs. Miller and the bank refused to lend her the money but made the loan to Griffith. The proceeds of the note, $4,900, after deducting the advance interest, was placed to the credit of J. O. Griffith and he gave his check for that amount to W. E. Hutton and Company which was credited to the account of Mrs. Miller. It is also shown that sometime thereafter Mrs. Miller gave J. O. Griffith her check for $700, and at a later date she and D. W. Miller executed the note sued on for $4,300, representing the balance of the $5,000 note of J. O. Griffith to the bank. Mattie M. Griffith testified that for awhile the note was misplaced and she thought she had lost it, and in order to have some evidence of the indebtedness they prepared the writing set out above which was signed by D. W. Miller and his wife acknowledging the indebtedness. We find no evidence tending to show that the note, or any part of it, has been paid.

It appears that J. O. Griffith and Mattie M. Griffith did all the buying and selling of stock but the account was in the name of Mrs. Miller, and her conduct during the transactions and subsequent thereto, as indicated above, tends to show beyond reasonable doubt that Mrs. Miller recognized her obligations to the brokers and acquiesced in all the transactions made and had between the brokers, J. O. Griffith and Mattie M. Griffith, and that the latter two were acting as her agents, rather

than merely speculating for themselves, as claimed by the defendants.

Conceding, without deciding, that all the defenses relied on by defendants might have been available to Mrs. Miller in an action against her by J. O. Griffith to enforce payment of the $5,000 he borrowed and paid to the brokers, Hutton and Company, yet, since Mrs. Miller did not see cause to deny her obligation to J. O. Griffith but recognized and settled the same by paying him $700 cash and executing the note in question representing the balance, none of the defenses relied on by defendants are now available, except the plea of payment, which the evidence fails to sustain, and perhaps the allegation that the note was executed on Sunday, if it was, which was not properly pleaded, for the reason stated above.

It is also argued that plaintiff took advantage of Mrs. Miller's age and health and persuaded her to permit plaintiff and her husband to use her, Mrs. Miller's, money in their stock speculations and also to sign the note sued on. Mrs. Miller was only 62 or 63 years old and, according to the evidence of some of the witnesses, she was in poor health, but there is neither pleadings nor evidence to the effect that Mrs. Miller was mentally infirm or otherwise incapable of transacting business, nor is there any evidence of undue influence, even though her health and condition was such as to render her susceptible to undue influence. Furthermore, D. W. Miller was present when his mother, Mrs. Miller, signed the note in which he joined as a joint maker, and there is no contention that he was incapable of transacting business or induced to sign the note by fraudulent representation or that he did not fully understand the nature or purpose of the transaction, or the obligation he was assuming, as well as that of his mother.

It results, therefore, from what has been said, that we are constrained to the conclusion that defendants, on whom rested the burden of proof, failed to sustain their defense to plaintiffs' claims and that the chancellor's judgment is contrary to the preponderance of the evidence.

Wherefore, the judgment is reversed and remanded for proceedings consistent with this opinion.

Whole court sitting, except Judge Perry.