22430

Emmett Lee GIBSON, Jr., Individually and as Executor of the Estate of Emmett Lee Gibson, Appellant, v. Ann G. BELCHER and Judy G. Devine, Individually and as Attorney in Fact for Fannie McLeod Gibson, Respondents.

(338 S. E. (2d) 330)

Supreme Court

*Michael F. Mullinax*, of *Long, Thomason and Mullinax*, Anderson, *for appellant.*

*James M. Robinson*, of *The Robinson Firm*, Easley, *for respondents.*

Heard Nov. 5, 1985.

Decided Dec. 17, 1985.

HARWELL, Justice:

This case involves a dispute as to the proper manner of distributing the personalty of the late Emmett Lee Gibson, Sr. The probate court held that half of the personalty in dispute belongs in Emmett Lee Gibson's estate and the other half belongs in the estate of his second wife, Fannie McLeod Gibson. On appeal, the circuit court held that all personalty, other than the items listed on Emmett Lee Gibson's Warrant of Appraisement, belongs in the estate of Fannie McLeod Gibson. We reverse.

## FACTS

The salient facts are not in dispute. Emmett Lee Gibson died testate in 1965. He left a life estate in his real and personal property to his second wife, Fannie McLeod Gibson, until her remarriage or death. The remainder was to be divided into six equal portions and distributed among Emmett Lee Gibson's four children from his first marriage and his two children from his second marriage.

Emmett Lee Gibson's will was probated and his two sons qualified as co-executors. The Petition to Prove Will and Warrant of Appraisement were filed along with a separate schedule itemizing Emmett Lee Gibson's personal property. While the schedule lists bank accounts, stocks and automobiles, it makes no mention of household goods or furnishings.

Fannie McLeod Gibson did not remarry. She lived in the marital home until she was confined to a nursing home in 1981. Upon her death in 1983, all of her property was devised to or inherited by her two daughters, the respondents. The

respondents removed all items of household goods, furnishings, silverware, and jewelry from the house. They assumed care, custody, and control of some of the items and placed some in storage. This was done without any prior consent or notification to the probate court or the heirs or executors of the estate of Emmett Lee Gibson.

## ISSUES

The appellants contend that 1) the entire personal estate of Emmett Lee Gibson, Sr. should be distributed in equal shares to each of his six children, even though the executor failed to list portions of it on the Warrant of Appraisement; 2) the respondents should return the personal estate to Pickens County so that it might be distributed under the will of Emmett Lee Gibson, Sr.; 3) the circuit court erred in applying the doctrines of laches and estoppel; and 4) the circuit court erred in failing to authorize the executor to pay reasonable attorney fees for the present case out of the estate.

## EFFECT OF FAILURE TO LIST ITEMS ON THE WARRANT OF APPRAISEMENT

It has long been the law in South Carolina that upon the testator's death, title to the personal property vests in the executor. *Lenoir v. Sylvester*, 17 S. C. L. (1 Bailey) 632 (1830); *Crosland's Ex'rs. v. Murdock*, 15 S. C. L. (4 McCord) 217 (1827). The failure to list an item in the inventory of an estate is not determinative of the title. *Griffith Adm'x. v. Miller*, 285 Ky. 675, 149 S. W. (2d) 11 (1941); *Ginocchio v. Frederick*, 19 Ill. App. (2d) 303, 153 N. E. (2d) 476 (1958). In fact, the respondents concede this point in their brief. "Respondents certainly agree that *if* an individual has an ownership interest in real or personal property, the failure of the executor to properly inventory the item in and of itself could not divest a person of his ownership interest."

Respondents contend that the inventory, which is indicative of ownership, coupled with a statement made by the appellant leads to the conclusion that the executor purposefully omitted the testator's household furnishings from the inventory. This claim is based on a two-

sentence answer given by the appellant on cross examination in the probate court. When the respondents' attorney asked whether it was the appellant's job to look after the personal assets, the appellant responded, "Well, I did what I thought was right, Mr. Robinson. I didn't come in and try to take over, or tell Fannie Mac what to do or a — that was her car as far as I was concerned, in fact, everything were hers, as far as I was concerned."

When viewed in conjunction with the other 21 pages of appellant's testimony, it is evident that appellant believed, and correctly so, that everything belonged to his father's widow during her lifetime. The record clearly reveals that the appellant operated under the erroneous assumption that since the widow was entitled to custody, possession, and use of these items during her lifetime, it was not necessary to list them in the inventory on the Warrant of Appraisement.

The respondents rely on *Williams v. Mower*, 29 S. C. 332, 7 S. E. 505 (1888) which states that where an executor willfully or intentionally omits a portion of the assets from the inventory of the testator's estate, he cannot later, for his own advantage, supply such an omission by falsifying his sworn return. We find the respondents' argument that the appellant willfully or intentionally omitted the household items from the inventory to be unpersuasive. Before a person can intentionally omit an item, he first must know that the item should be included.

In the present case, the executor mistakenly failed to include the household goods in the inventory. As to unintentional errors or mistakes, the *Mower* case states, "It [the law] recognizes the liability [sic] of the best and most careful persons to make mistakes and omissions, and therefore we cannot say that an inventory returned under oath by an executor is so absolutely conclusive against the executor as to preclude him from offering evidence to show such errors." *Mower*, 29 S. C. at 339, 7 S. E. at 508.

## RETURN OF PERSONALTY TO PICKENS COUNTY

Having determined that, in derogation of the rights of the heirs and executors of the estate of Emmett Lee Gibson, the respondents removed the household goods and furnishings, it is proper that the respondents

should return all items of the personal estate to a central location in Pickens County. The respondents are responsible for all costs and expenses of locating, transporting, storing, and safekeeping of these household goods.

The testimony revealed that the vast majority, if not all, of the items of personalty were acquired during the marriage of Emmett Lee Gibson and Fannie McLeod Gibson. One half of his property therefore shall be placed in the estate of Emmett Lee Gibson and one half in the estate of Fannie McLeod Gibson.

## LACHES AND ESTOPPEL

Respondents assert that an application of the doctrines of laches and estoppel prevents the appellant from claiming the unlisted household goods. Laches does not begin to run against a remainderman under the law of South Carolina until the death of the life tenant. *Rollins v. May*, 473 F. Supp. 358 (D. S. C. 1978), *aff'd* 603 F. (2d) 487 (4th Cir. 1979).

The doctrine of estoppel is likewise inapplicable in this situation. To successfully assert the doctrine of estoppel one must show that he was without knowledge, *or any means of knowledge*, of facts upon which he predicates the claim of estoppel. *Southern Coatings & Chemical Co. v. Belcher*, 274 S. C. 76, 261 S. E. (2d) 162 (1979); *Hubbard v. Beverly*, 197 S. C. 476, 15 S. E. (2d) 740 (1941). Respondents make much of the fact that their lawyer checked the probate court records before they removed the household goods. There is no mention of why respondents chose to look solely to the contents of the Warrant of Appraisement and ignore the contents of the will. Mrs. Belcher, the respondent who testified before the probate court, stated that she was aware of the contents of her father's will, in particular the fact that her mother was given only a life estate. When the respondents noticed a discrepancy between the provision of the will and the Warrant of Appraisement, they should have applied to the probate court for clarification or instruction rather than taking the matter into their own hands.

## ATTORNEY FEES

The executor had a duty to gather and distribute the assets of the estate of Emmett Lee Gibson. The intervening life estate made it impossible for this distribution to occur prior to the death of the wife. Demand was made upon the respondents in this action to return the property. When they refused to do so, it was right and proper for the appellant to employ an attorney. *See Evans v. Adams*, 180 S. C. 214, 185 S. E. 57 (1936); *See also* 31 Am. Jur. (2d) *Executors and Administrators* § 166 (1967). The probate court was correct in authorizing and directing the executor to pay a reasonable amount of attorney's fees from the estate.

The order of the circuit court is reversed and the case is remanded to the probate court for distribution of the estate.

Reversed and remanded.

NESS, C. J., and GREGORY, CHANDLER and FINNEY, JJ., concur.