664 S.E.2d 83

**ESTATE OF Beatrice K. CARR by and through Beatrice Sue BOLTON, Personal Representative, Appellant,**

**v.**

**CIRCLE S ENTERPRISES, INC. d/b/a Newberry Auto Mart, Respondent.**

**No. 4410.**

Court of Appeals of South Carolina.

Heard May 7, 2008.

Decided June 10, 2008.

32

34

Paul A. James, of N. Charleston and Paula Howker Amick, of Columbia, for Appellant.

Karl S. Brehmer and L. Darby Plexico, III, both of Columbia, for Respondent.

PIEPER, J.:

The Estate of Beatrice K. Carr (Estate) appeals the trial court's order granting the motion for directed verdict by Circle S Enterprises, Inc. d/b/a Newberry Auto Mart, (the Dealership). The Estate argues the trial court erred in granting a directed verdict in favor of the Dealership on the following grounds: (1) the motion for a directed verdict was improperly postured; (2) the Estate suffered damages as a result of the Dealership's conduct; and (3) there was sufficient evidence for submission of the various causes of action to the jury. We reverse.

## FACTS

In late September 2000, Linda Carr (Linda) was in the market to buy an automobile. Linda, her mother Beatrice Carr (Beatrice), and the rest of her family went to the Dealership to purchase a vehicle for Linda. While negotiating for the purchase of a 1999 Chrysler Sebring convertible with the Dealership's salesman, it was brought to Linda and Beatrice's attention that they would receive a more favorable interest rate on their loan if the vehicle was purchased in Beatrice's name as opposed to Linda's name. Accordingly, Beatrice agreed to allow the vehicle to be purchased under her name and signed a retail installment contract and security agreement with the financing company, Firstar Financial Services (Firstar), for the financing of the vehicle.[1] The amount financed was $15,751.49 and monthly payments on the loan came to $334.09. Each of the first 41 monthly payments included $29.00 to pay for credit life and disability insurance, which Linda testified the Dealership required in order for the sale to be completed in Beatrice's name. The total cost of the proposed insurance coverage came to $1,543.49.

On June 1, 2003, Beatrice, at age eighty-one, passed away. After her mother's death, Linda stopped making the payments on the note under the assumption that the credit life insurance would apply and pay off the note. Upon discovering that the note had not been paid, Linda contacted the Dealership which, after numerous attempts to justify the misapplication of the premiums, eventually informed her that Beatrice had been too old to qualify for the insurance; the Dealership proceeded as if the coverage had never been purchased. The Dealership thereafter refunded the insurance premiums plus 6% interest from the date of the sale to the Estate. However, at this point, the note was past due and the vehicle had been repossessed.

The only beneficiaries under Beatrice's last will and testament were Linda's daughter, Deborah S. Carr, and Linda's sister, Beatrice Sue Bolton (Mrs. Bolton). Mrs. Bolton was the personal representative for the Estate. She filed the original inventory and appraisement on February 3, 2005, without mention of the 1999 Sebring as an asset of the Estate,

---

1. Firstar subsequently sold the note to U.S. Bank.

the potential civil claim against the Dealership, or the debt owed to Firstar/US Bank. Mrs. Bolton reopened the Estate in August of 2006, after this claim was filed, to account for the action against the Dealership.

The Estate filed a Summons and Complaint on January 18, 2005, alleging breach of contract, conversion, negligence, violation of the South Carolina Unfair Trade Practices Act (hereinafter SCUTPA), and violations of the Regulation of Manufacturers, Distributors, and Dealers Act (hereinafter Dealers Act). Ultimately, the case was called for trial before a jury on February 5, 2007, in the Newberry County Court of Common Pleas. At the close of all evidence, the trial court granted the Dealership's motion for a directed verdict. The trial judge stated "there's no evidence that the Estate has suffered any loss or has been damaged in any way on the specific causes.... I also find there's insufficient evidence to show a violation of the Dealers Act ... and the same thing with unfair trade practice." This ruling on the record was solemnized by a written form order stating "Court Directed Verdict Against Plaintiff." The Estate thereafter filed and served this notice of appeal on February 26, 2007.

## STANDARD OF REVIEW

In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion and to deny the motion when either the evidence yields more than one inference or its inference is in doubt. *Law v. S.C. Dep't of Corr.,* 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006); *Sabb v. S.C. State Univ.,* 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). However, this rule does not authorize submission of speculative, theoretical, or hypothetical views to the jury. *Proctor v. Dep't of Health & Envtl. Control,* 368 S.C. 279, 292–93, 628 S.E.2d 496, 503 (Ct.App.2006). In essence, the court must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in his or her favor. *Harvey v. Strickland,* 350 S.C. 303, 309, 566 S.E.2d 529, 532 (2002); *Proctor* at 293, 628 S.E.2d at 503.

 The appellate court will reverse the trial court's ruling on a directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law. *Law* at 434–35, 629 S.E.2d at 648. When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Erickson v. Jones St. Publishers, L.L.C.*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006).

## LAW/ANALYSIS

 First, the Estate argues that the trial court erred in directing a verdict since a motion for a directed verdict was not made by the Dealership at the close of the plaintiff's case. We disagree.

The Estate claims that because the Dealership only made a motion to dismiss at the close of the plaintiff's case, it could not subsequently make a motion for a directed verdict at the close of all the evidence. The Estate is mischaracterizing the motions made by the Dealership. At the close of the plaintiff's case, the Dealership did make a motion to dismiss challenging the Estate's existence at the time the suit was filed. However, immediately thereafter, the Dealership asserted its directed verdict motion as to each of the causes of action. The trial court entertained the request as a directed verdict motion, despite not initially being mentioned by name, and denied the request at that point in the trial. At the close of all evidence, the directed verdict motion was revisited. The Dealership appropriately referred to the motion by claiming entitlement to a directed verdict and the trial judge treated the motion as such in his order by directing a verdict against the Estate. Regardless of the form in which the request for relief was framed, the substance of the relief sought is controlling. *Standard Federal Sav. and Loan Ass'n v. Mungo*, 306 S.C. 22, 26, 410 S.E.2d 18, 20 (Ct.App.1991). The record is clear that throughout the arguments both counsel and the trial judge understood the motion being entertained was a motion for a directed verdict. Counsel for the Dealership at the close of his final argument stated: "we think that we're entitled to a directed verdict on all causes of action for all the reasons stated." Accordingly, the motion was properly before the

court and the judge appropriately treated the motion as a directed verdict motion.

In addition, the Estate failed to contemporaneously object to the trial court treating the motion as one for a directed verdict. Therefore, the matter is not preserved for our review. *See In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court."); *Lucas v. Rawl Family Ltd. P' ship.*, 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004) ("It is well settled that, but for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon by the trial court.").

As to the remainder of the Estate's allegations, we must consider whether or not the Estate suffered any damage. The trial judge based his ruling primarily on the conclusion that the Estate suffered no damage. We respectfully find the court erred.

We first note that it was error for the trial court to conclude that the Estate suffered no damage at the directed verdict stage of the trial. "The failure to list an item in the inventory of an estate is not determinative of the title." *Gibson v. Belcher*, 287 S.C. 315, 318, 338 S.E.2d 330, 332 (1985) (citing *Griffith Adm'x. v. Miller*, 285 Ky. 675, 149 S.W.2d 11 (1941)). Furthermore, the president of the Dealership admitted the existence of a contract between Beatrice and the Dealership. Beatrice bought the vehicle from the Dealership by arranging for financing through Firstar. Beatrice was therefore the legal owner of the vehicle, although Linda made payments on the vehicle. Therefore, under these circumstances, legal title would remain in Beatrice but we recognize Linda may arguably have a legal or equitable claim because of any payments made.

Since Beatrice was the legal owner of the vehicle, her interest passes to her estate upon her demise. "It has long been the law in South Carolina that upon the testator's death, title to the personal property vests in the executor." *Belcher*, 287 S.C. at 318, 338 S.E.2d at 332 (citing *Lenoir v. Sylvester*, 1

Bail. 632, 17 S.C.L. 632 (1830)).[2] Therefore, we find the Estate would have benefitted had the insurance been obtained and the policy paid, thereby preventing the repossession of the vehicle. The loan in Beatrice's name would have been paid off by those proceeds as an obvious benefit to the Estate in its entirety. The Estate's legal title would only be subject to Linda's equitable or legal interest at that point as opposed to also being subject to Firstar/U.S. Bank's security interest.

Moreover, we find that whether the Dealership is liable for any alleged insurance coverage is a question for the jury. If the jury were to find such liability, that coverage would be an asset of the Estate. *See Moultis v. Degen,* 279 S.C. 1, 7, 301 S.E.2d 554, 558 (1983) (citing *In re Miles Estate,* 262 N.C. 647, 138 S.E.2d 487 (1964) (holding that an undistributed insurance policy is an asset of the estate)). There is sufficient evidence in the record to support the claim that the Dealership was obtaining insurance for Beatrice. Generally, one who pays insurance premiums is justified in assuming that payment will bring immediate protection. *Crossley v. State Farm Mut. Auto. Ins. Co.,* 307 S.C. 354, 357, 415 S.E.2d 393, 395 (1992). In the case at hand, the insurance premium was paid up front through its inclusion in the financing arrangement thereby evidencing an insurance agreement between the parties; however, we also recognize the existence of contrary contractual language yet cannot resolve these conflicts at the directed verdict stage. The terms of the contract included the offer to secure credit life and disability coverage in exchange for the payment of the premium. The premiums were admittedly received and misapplied. While the Dealership argues that it is not an insurance provider and that it was only offering to obtain quotes for Beatrice, it nonetheless accepted and retained payments for insurance coverage it never obtained for an extensive period of time. The acceptance of these payments at a minimum presents a question as to the existence of a contract as well as a question as to the Dealership's liability for said coverage.

---

**2.** This concept is currently codified in section 62–3–101 which states that a decedent's personal property "devolves, first, to his personal representative." S.C.Code Ann. § 62–3–101 (Supp.2007).

 Having established that the Estate suffered damage, we now turn to the remainder of the Estate's allegations. First, as to the breach of contract claim, there is sufficient evidence as to the existence of a contract and its breach by the Dealership. Further, sufficient evidence exists in the record for a jury to conclude that the Estate, as legal owner of the automobile, was damaged by the breach of that contract. Second, the Dealership admitted to accepting and retaining the insurance premiums for its own benefit, thereby creating at least an inference that the funds were improperly converted, although eventually returned. Third, as to the negligence cause of action, due to the nature of the relationship between the Dealership and Beatrice, the Dealership had a duty to properly utilize the insurance premiums paid to obtain the proper insurance coverage; otherwise, at a minimum, the Dealership should have indicated that coverage was not obtained. Sufficient evidence exists in the record that such duty was breached and that the breach proximately injured the Estate, thereby warranting the submission of the claim to the jury. The mere fact the Dealership subsequently realized its error and refunded the alleged premiums is not dispositive as to whether the Estate's claims may proceed.

Accordingly, we respectfully find the court erred in directing a verdict as to the causes of action for breach of contract, conversion, and negligence.

 The Estate next asserts that the court erred in directing a verdict on its cause of action for a violation of the Dealers Act. The Dealers Act declares certain unfair methods of competition and unfair or deceptive acts or practices to be unlawful. S.C.Code Ann. § 56–15–30(a) (2006). It is a violation of the Dealers Act for any manufacturer or motor vehicle dealer "to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public." S.C.Code Ann. § 56–15–40(1) (2006).

Our supreme court has defined the term "arbitrary" for purposes of the Dealers Act to include "acts which are unreasonable, capricious or nonrational; not done according to reason or judgment; depending on will alone." *Taylor v. Nix*, 307 S.C. 551, 555, 416 S.E.2d 619, 621 (1992). Furthermore, our supreme court has defined bad faith as:

The opposite of good faith, generally implying or involving actual or constructive fraud, or a design to deceive or mislead another, or a neglect or refusal to [fulfill] some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.

*State v. Griffin,* 100 S.C. 331, 333, 84 S.E. 876, 877 (1915) (quoting Black's Law Dictionary).

"The Dealers Act defines 'fraud' to include its 'normal legal connotation' as well as 'misrepresentation in any manner, whether intentionally false or due to gross negligence, of a material fact; a promise or representation not made honestly and in good faith; and an intentional failure to disclose a material fact.' " *deBondt v. Carlton Motorcars, Inc.,* 342 S.C. 254, 263–64, 536 S.E.2d 399, 404 (Ct.App.2000) (quoting S.C.Code Ann. § 56–15–10(m) (1991)).

 To be liable under the Dealers Act, the dealer must participate in the wrongful conduct. *Jackson v. Speed,* 326 S.C. 289, 302, 486 S.E.2d 750, 756 (1997). "An agent for an entity who makes misrepresentations while attempting to sell a motor vehicle qualifies as a dealer who may be held liable under this act." *Id.* at 302, 486 S.E.2d at 756. The record contains evidence of misrepresentations by the Dealership. Whether intentional or not, the president of the Dealership admitted to unintentionally offering numerous misleading explanations regarding the ultimate disposition of the insurance premiums. These misrepresentations constitute a sufficient basis to submit the violation of the Dealers Act cause of action to the jury. Accordingly, the trial court erred in granting a directed verdict on this cause of action.

 Finally, the Estate claims the trial court erred in directing a verdict on its SCUTPA cause of action. To recover in an action under the SCUTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s). S.C.Code Ann. § 39–5–10– 560 (Supp.2007). The second element may be satisfied by proof of "facts demonstrating the potential for repetition of

the defendant's actions." *Daisy Outdoor Adver. Co., Inc. v. Abbott,* 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996). "Plaintiffs . . . generally have shown potential for repetition in two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence . . . or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *Id.* at 496, 473 S.E.2d at 51 (citations omitted).

Sufficient evidence exists in the record for submission of this cause of action to the jury. The first and third elements of the cause of action are sufficiently supported by the evidence for submission to the jury for reasons similar to those as necessary for submission of the Dealers Act claim. The public interest element necessitates additional scrutiny. The Estate, while questioning the president of the Dealership, specifically inquired about the existence of safeguards to ensure that unapplied premiums would be refunded. While the response to the question was unclear, an inference could be made that the Dealership lacked internal protections to prevent the reoccurrence of this conduct in the future. The conduct complained of herein continued for approximately three years without action.[3] Therefore, there is some evidence relating to the potential for public harm which justifies the submission of the SCUTPA claim to the jury. Accordingly, the trial court erred by directing a verdict against the Estate as to the SCUTPA cause of action.

## CONCLUSION

For the aforementioned reasons, the order of the trial court directing a verdict against the Estate is hereby

**REVERSED.**

HEARN, C.J., and CURETON, A.J. concur.

---

3. As to SCUTPA, counsel specifically asked whether other customers could have been similarly overcharged. The question was never answered even after an objection to the question was successfully overruled.