**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Marvin Gipson, Respondent,

v.

Clyde Williamson, Betsy Williamson, Coffey & McKenzie, P.A., Defendants,

Of which Coffey & McKenzie, P.A. is the Appellant.

Appellate Case No. 2020-000720

———————

Appeal From Clarendon County
Kristi F. Curtis, Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP-324
Heard April 6, 2023 – Filed October 4, 2023

———————

**AFFIRMED**

———————

Steven Smith McKenzie, of Coffey & McKenzie, PA, of Manning, for Appellant.

Benjamin Allen Dunn, II, of Columbia, for Respondent.

———————

**PER CURIAM:** This case arises out of a real estate transaction thwarted by an email hack. Coffey & McKenzie (Law Firm) appeals the $10,306 jury verdict awarded to Marvin Gipson on a negligence action. We affirm.

**FACTS/PROCEDURAL HISTORY**

In 2016, Marvin Gipson contracted to sell property in Clarendon County to Clyde and Betty Williamson (the Williamsons) for $12,000.[1]  At trial, Gipson testified he lived in Texas during the pendency of the transaction and his local real estate agent recommended using Law Firm for the closing.  Law Firm represented both Gipson and the Williamsons.  Gipson's only contact with Law Firm was by mail, telephone, and email, mostly with an assistant (the Assistant).  Gipson testified that during a pre-closing phone call, the Assistant mentioned she had received bank wiring instructions for the sale proceeds.  Gipson told her he never sent bank wiring information and expected to receive a check.  Gipson received the closing documents by email.  Gipson testified he signed the closing documents in Texas and scanned and returned them "to an email . . . received from [the Assistant at Law Firm]."  Gipson sent the originals back to Law Firm via FedEx.  Gipson did not receive a phone call confirming the completion of closing and did not receive the sales proceeds check.  He waited eleven days before calling Law Firm to report that he never received the check.

Upon investigation, the Assistant and Gipson realized the Assistant sent the closing confirmation email to a fictitious email address that appeared very similar to Gipson's email address.[2]  Further investigation revealed that an unknown thief sent the Assistant bank wiring instructions for the transaction using the fake email address for Gipson and that she unwittingly wired the money to the thief.  To further the scam, the thief sent Gipson email correspondence asking for the FedEx tracking number of the closing documents using Law Firm's letterhead from a similar but fake email address for the Assistant.  After realizing he could not recover the stolen money, Gipson contacted numerous local, state, and federal law enforcement authorities but was told his only avenue of redress was through litigation.  At trial, Gipson stated Law Firm did not pursue recovery of the stolen money and "wiped their hands of it and left [him] hanging."

At the close of Gipson's case, Law Firm moved for a directed verdict on the negligence action, arguing Gipson did not present expert testimony that Law Firm failed to meet the standard of care for a real estate closing in South Carolina.

---

[1] Gipson was to receive $10,306 after paying closing costs.

[2] The difference between the real and fake email addresses was cunning.  Gipson's real email address was Mail4marvin@gmail.com.  The fake email address was Mail4rnarvin@gmail.com.

Gipson argued Law Firm's duty arose from its fiduciary role and was "distinct from duties that arise out of the attorney-client relationship." The trial court denied Law Firm's motion for a directed verdict, ruling that expert testimony was not necessary because the subject matter of the complaint was within common knowledge and experience.

Law Firm then presented expert testimony that its email server was not hacked or breached. The expert opined it was a "man in the middle attack," wherein the thief was privy to information possibly obtained through a breach of Gipson's or the real estate agent's email, or by overhearing information.

Joe Coffey, a partner in Law Firm, testified he used "two-pronged authentication" to verify Gipson's correct email address. Coffey testified Law Firm had wiring instructions from Gipson and disbursed the funds pursuant to those instructions. He stated that he did "anything and everything" he could to recover the stolen funds, including securing the return of $1,516 in residual funds in the escrow account to Gipson. Coffey stated he could have recovered a significantly larger amount of the stolen funds if Gipson had contacted him sooner than eleven days after closing.

At the close of testimony, Law Firm again argued Gipson failed to establish a viable legal malpractice claim and noted that real estate closings must be handled by an attorney. In denying the directed verdict motion, the trial court stated Law Firm had a fiduciary duty separate from any legal malpractice claim. The jury returned a verdict for Gipson for $10,306, and this appeal followed.

**ISSUES ON APPEAL**

I. Did the trial court err in denying Law Firm's motion for a directed verdict?

II. Did the trial court err in refusing to reduce the amount of the jury's verdict?

**STANDARD OF REVIEW**

"The standard of review for an appeal of an action at law tried by a jury is restricted to corrections of errors of law. A factual finding of the jury will not be disturbed unless there is no evidence which reasonably supports the findings of the jury." *Pope v. Heritage Cmtys., Inc.*, 395 S.C. 404, 412, 717 S.E.2d 765, 769 (Ct. App. 2011) (quoting *Felder v. K–Mart Corp.*, 297 S.C. 446, 448, 377 S.E.2d 332, 333 (1989)). "The appellate court will reverse the trial court's ruling on a directed

verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law." *Estate of Carr ex re. Bolton v. Circle S. Enters., Inc.*, 379 S.C. 31, 39, 664 S.E.2d 83, 86 (Ct. App. 2008). "When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Id.* "The jury's determination of damages . . . is entitled to substantial deference." *Harrison v. Bevilacqua*, 354 S.C. 129, 140, 580 S.E.2d 109, 115 (2003).

**LAW/ANALYSIS**

**I. Directed Verdict**

Gipson sued Law Firm for negligence and stated in the complaint that Law Firm as the "closing attorneys . . . had a duty to exercise due care in handling all monies involved in the transaction . . . ." Gipson alleged Law Firm "breached its duty of care by ignoring [Gipson's] instructions to send his proceeds in the form of a check . . . ." Law Firm argues this suit is for legal malpractice, and Gipson failed to establish by expert testimony the standard of care owed by a law firm to its client. Law Firm claims Coffey's testimony established Law Firm followed the "double verify" standard of care owed to Gipson before wiring the sales proceeds, and argues the trial court should have granted its directed verdict motion.

We find the trial court did not err in refusing to direct a verdict for Law Firm.

> In a negligence action, a plaintiff must show that the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages.

*Steinke v. S.C. Dep't of Lab., Licensing and Regul.*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999). Here, Gipson's suit alleges Law Firm was negligent by failing to follow his instructions to send the sales proceeds in the form of a check instead of a wire. Gipson presented testimony whereby the jury could have found that Law Firm owed a duty of care to Gipson as the escrow agent for the sales proceeds, possibly breached that duty by disregarding his instructions, and the breach caused Gipson to lose the sales proceeds. Regardless of whether the suit was one for negligence or legal malpractice, expert testimony was not required to establish

something that lends itself to common experience. *See Sims v. Hall*, 357 S.C. 288, 295–96, 592 S.E.2d 315, 319 (Ct. App. 2003) ("Generally, a plaintiff in a legal malpractice case must establish the standard of care by expert testimony, unless the subject matter is of common knowledge to laypersons."); s*ee also Mali v. Odom*, 295 S.C. 78, 80, 367 S.E.2d 166, 168 (Ct. App. 1988) (noting the rules of evidence in legal malpractice actions are the same as in medical malpractice); *Thomas v. Dootson*, 377 S.C. 293, 296, 659 S.E.2d 253, 255 (Ct. App. 2008) (noting an exception exists to the requirement for expert testimony in medical malpractice cases when the subject matter is within the "common knowledge and experience of laymen"). Here, Law Firm's alleged failure to follow Gipson's instructions to send the sales proceeds in the form of a check instead of a wire falls within the common knowledge of laypersons and does not require specialized knowledge to establish a standard of care. It was not for the trial court to "weigh the evidence or determine the credibility of the witnesses" but rather to "consider the evidence and all its reasonable inferences in the light most favorable to [Gipson] and deny the motion if it yield[ed] more than one inference." *Odom*, 295 S.C. at 81–82, 367 S.E.2d at 169. Therefore, the trial court did not err in refusing to direct a verdict for Law Firm.

## II. Verdict Amount

Law firm argues the jury's verdict should be reduced to $8,789.11 to account for the $1,516.89 of residual funds reimbursed to Gipson by the bank.[3] We disagree. Law Firm and Gipson introduced evidence of the $1,516.89, and it was within the purview of the jury to decide the amount of the verdict for actual damages. "[T]he amount [of actual damages] to be awarded is peculiarly within the judgment and discretion of the jury, subject to the supervisory power of the trial judge over jury verdicts." *Hicks v. Herring*, 246 S.C. 429, 436, 144 S.E.2d 151, 154 (1965); *see also Clark v. Cantrell*, 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) ("The purpose of actual or compensatory damages is to compensate a party for injuries suffered or losses sustained. The goal is to restore the injured party, as nearly as possible through the payment of money, to the same position he or she was in before the wrongful injury occurred."). Accordingly, the trial court did not err in refusing to reduce the verdict.

Further, because Law Firm, itself, did not pay Gipson, the issue is governed by the collateral source rule. "The collateral source rule provides 'that compensation received by an injured party from a source wholly independent of the wrongdoer

---

[3] Law Firm does not offer citation to case law to support this argument.

will not reduce the damages owed by the wrongdoer.'" *Covington v. George*, 359 S.C. 100, 103, 597 S.E.2d 142, 144 (2004) (quoting *Citizens and S. Natl. Bank of S.C. v. Gregory*, 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995)). "A tortfeasor cannot 'take advantage of a contract between an injured party and a third person, no matter whether the source of the funds received is an insurance company, an employer, a family member, or other source.'" *Id.* (quoting *Pustaver v. Gooden*, 350 S.C. 409, 413, 566 S.E.2d 199, 201 (Ct. App. 2002)).

## CONCLUSION

Based on the foregoing, we find expert testimony was not required to establish a standard of care on subject matter within the common knowledge of laypersons and it was within the jury's judgment and discretion to decide the amount of the award. Accordingly, the holdings of the circuit court are

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS and VERDIN, JJ., concur.**