**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Doretta McHugh, as Personal Representative of the Estate of Daniel E. Coy, Appellant,

v.

John Doe, Respondent.

Appellate Case No. 2020-000757

Appeal From Berkeley County
Deadra L. Jefferson, Circuit Court Judge

Unpublished Opinion No. 2023-UP-347
Heard September 13, 2023 – Filed October 25, 2023

**AFFIRMED**

Daniel Carson Boles, of North Charleston, for Appellant.

Michael T. Coulter, of Clarkson, Walsh & Coulter, P.A., of Greenville, and Michelle N. Endemann, of Charleston, both for Respondent.

**PER CURIAM:** Doretta McHugh, personal representative of the Estate of Daniel Coy (the Estate), appeals a jury verdict in favor of John Doe, a possible unidentified driver who left the scene of an accident involving her late son, Daniel

Coy.[1]  McHugh argues the circuit court erred in (1) admitting evidence of Coy's preexisting condition and prior motorcycle fall, and (2) denying the Estate's motions for a directed verdict and for judgment notwithstanding the verdict (JNOV).  We affirm.

**Facts and Procedural History**

Coy was injured in a motorcycle accident while on his way to work the night shift at a Berkeley County Circle K.  Coy was in the turn lane preparing to turn into the store parking lot when he suddenly felt a jerk.  Although he tried to stop, he flew over his handlebars and his motorcycle rolled over him.  Initially, Coy believed his "bike had seized up"; however, witnesses later told him he had been struck by another vehicle.  Coy testified in his deposition that he got off the ground as fast as he could because he was still in the middle of the road near the turn lane.  He did not see or hear a vehicle behind him because he was "too busy paying attention to the turn" into the parking lot.  He noticed other vehicles in the lane beside him, but not behind him.

Law enforcement and EMS responded to the scene, but Coy did not immediately seek treatment.  He suffered injuries to his left foot, road rash on several areas of his body, and a scar where his glasses struck his face.  Coy missed one shift at Circle K and his motorcycle was totaled in the accident; he was without transportation for three weeks until he could save for the down payment on a new motorcycle.  Coy's insurer, Progressive Insurance Company (Insurer), paid $10,500 for the damaged motorcycle.

Coy later filed a John Doe complaint alleging an unidentified defendant caused his accident.  Insurer appeared as Coy's uninsured motorist carrier and timely answered on behalf of John Doe.  Because Coy passed away before trial, the circuit court allowed portions of his deposition to be read into evidence.

Coy's coworker, Aimee Goblet, testified that she witnessed the accident.  Goblet heard the motorcycle, went to the store's door, and saw "a car coming up behind him rather fast" as Coy slowed down to turn into the parking lot.  She explained that Coy made a wide turn into the parking lot but never veered from his turning lane.  Goblet heard a screech and an impact—and claimed she saw the car hit Coy from behind, causing him to be thrown from the bike—before the car went around him and turned into a neighborhood.  Goblet noted she saw Coy's turn signal was

---

[1] Sadly, Coy died in a subsequent motorcycle accident.

on and was able to witness these events from inside the Circle K. She further testified that when she rushed over to help Coy get out of the road, he was not moving and appeared to be unconscious. Goblet and her daughter pulled Coy out of the road, two men helped with his bike, and Coy then began moving around and talking. Although Coy wanted to stay and work his shift, he was sent home because he could not tell Goblet what day it was or identify the location where they were working.

Goblet's daughter, Malea Ward, was at the Circle K that night to pick up her mother. As Coy was running late, Ward was outside watching the road for him when she noticed a black car getting "closer and closer behind him as if they were trying to intimidate him to go faster." Ward saw the car hit the back of Coy's motorcycle; Coy then "flew off the bike" over his handlebars before landing in the road on the line between the turn lane and the adjacent lane. Ward's trial and deposition testimony conflicted as to where the fleeing vehicle went as it left the gas station.

Ward was unable to see the driver of the car due to the glare of the street lights and the car's tinted windows. She admitted she was also unable to see the point of contact between the car and Coy's motorcycle from where she was standing. Ward further admitted she could not see a point of contact between the vehicles, but she saw the car get very close to the motorcycle "where I would think that it was touching the motorcycle when I saw the back tire stop." Because Ward was unsure whether her mother witnessed the accident, she went inside the store to ask her to call 911. According to Ward, Goblet was standing behind the counter inside the Circle K—not at the door.

Doretta McHugh described her son's injuries and identified pictures of his damaged motorcycle, noting damage to the rear license plate area, tail light, seat, and handlebars. On cross-examination, McHugh admitted her son "had his doubts" about whether another vehicle struck him from behind or whether "his motorcycle had seized up."

After the defense called no witnesses and rested, the Estate moved for a directed verdict, arguing the uncontroverted testimony was that John Doe was driving aggressively behind Coy and caused the accident. Doe's counsel responded, referencing Coy's deposition admission that he initially believed his motorcycle had seized up and did not realize he had been struck by a vehicle. The circuit court denied the Estate's motion, finding questions of fact for the jury remained.

The jury found for the defendant. The Estate moved for judgment notwithstanding the verdict (JNOV), alleging "there must have been some confusion on that jury verdict form, confusion of the facts in the case, but the only reasonable inference was that liability lies with the defendant." The circuit court denied this motion, finding two theories of the case were presented, the jury may have chosen to disbelieve the Estate's witnesses due to their relationships with Coy, and sufficient evidence supported the jury's verdict.

The circuit court denied the Estate's subsequent Rule 59(e), SCRCP, motion and motion for a new trial. The circuit court noted that although the Estate argued it was entitled to a new trial under Rule 404, SCRE, the Estate did not present any specific Rule 404 arguments at trial. The Estate filed another motion to reconsider as to this post-trial order; the circuit court denied this motion as well.

## I. Admission of Evidence of Coy's Preexisting Condition

The Estate argues the circuit court erred in admitting into evidence Coy's deposition testimony regarding his prior fall from a motorcycle. The Estate contends that because it did not place Coy's character or habit at issue, the evidence should have been excluded under Rule 404, SCRE. The Estate further asserts evidence of the prior fall was inadmissible under Rule 403, SCRE. We disagree.

Prior to trial, the circuit court addressed issues regarding the deposition excerpts, including the Estate's objection to the following testimony in which Coy volunteered information about his prior motorcycle training accident:

> Q. Do you care—after we get through taking your deposition, do you mind me taking a photograph of your scar?
>
> A. Sure. Sure. Sure. And it's not as frequent, but I still get headaches from time to time because I also had a minor fall with my bike where—it was where we were practicing the training on motorcycle training where you're moving along, and then basically flipping the bike or flipping yourself off the bike, and I messed up and went off the bike to the side and landed on my head with a helmet on, but the accident six weeks later or whatever, I basically incurred two concussions within principally two months.

> Q. So the other event was six weeks earlier?

> A. Yes. At the motorcycle training course.

Coy further admitted he had experienced constant headaches since the training accident.

As to whether the circuit court erred in admitting evidence of Coy's prior accident under Rule 404, we note no Rule 404, SCRE, evidence was elicited by the defense. Coy discussed the prior accident and headaches in response to a question about his scarring and noted he still had headaches from the recent training fall. Whether Coy had preexisting headaches was obviously relevant to his damages claim here. Thus, we find the circuit court did not abuse its discretion in admitting this deposition testimony because it was offered to establish the preexisting (and continuing) headaches caused by the training accident. We further find the Rule 403 and opening statement arguments relating to this testimony are not preserved for our review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

In the challenged portion of his closing argument, Doe argued, "[Coy] said, I've got—there was some damages regarding pain and suffering for headaches. And how is it that he—then you heard about the situation where six weeks before he is turning and braking and making a maneuver on the bike and flies off and hits his head." The circuit court sustained the Estate's objection here and instructed the jury to "disregard counsel's last comment." Thus, this issue is not preserved for review. *See State v. Wilson*, 389 S.C. 579, 583, 698 S.E.2d 862, 864 (Ct. App. 2010) ("[A]s the law assumes a curative instruction will remedy an error, failure to accept such a charge when offered, or failure to object to the sufficiency of that charge, renders the issue waived and unpreserved for appellate review.").

## II. Motions for Directed Verdict and JNOV

The circuit court properly denied the Estate's motions for directed verdict and JNOV because more than one inference can be drawn from the evidence presented at trial. *See Est. of Carr ex rel. Bolton v. Circle S Enters., Inc.*, 379 S.C. 31, 38, 664 S.E.2d 83, 86 (Ct. App. 2008) ("In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion

and to deny the motion when either the evidence yields more than one inference or its inference is in doubt."); *Bass v. S.C. Dep't of Soc. Servs.*, 414 S.C. 558, 570, 780 S.E.2d 252, 258 (2015) (reiterating that on appeal, a jury's verdict "must be upheld unless no evidence reasonably supports the jury's findings. Moreover, neither an appellate court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony or the evidence." (citation omitted) (quoting *Curcio v. Caterpillar, Inc.*, 355 S.C. 316, 320, 585 S.E.2d 272, 274 (2003))).

There were numerous inconsistencies in Goblet, Ward, and Coy's testimonies. For example, Coy testified, "I picked myself up off the ground" while Goblet testified Coy seemed unconscious when she and Ward pulled him from the road. And, Coy noted he saw vehicles in the lane beside him, but not behind him, yet Ward claimed to see a vehicle right behind Coy that was louder than his motorcycle. Perhaps more significantly, although Goblet claimed she was at the store door and actually saw the accident, Ward testified Goblet was still behind the counter when she ran inside to ask her to call 911. Other inconsistences and evidence in the record provide further support for the circuit court's rulings.

Because the evidence presented more than one reasonable inference as to whether the negligence of a John Doe driver caused Coy's accident, the circuit court properly submitted the case to the jury and correctly denied the Estate's post-trial motions.

**AFFIRMED.**

**MCDONALD and VINSON, JJ., and LOCKEMY, A.J., concur.**