536 S.E.2d 399

**Christina G. deBONDT, Appellant,**

v.

**CARLTON MOTORCARS, INC., and Mercedes–Benz, N.A., Respondents.**

**No. 3229.**

Court of Appeals of South Carolina.

Heard April 12, 2000.

Decided July 24, 2000.

---

256

258

Frank L. Eppes, of Eppes & Plumblee, of Greenville, for Appellant.

Cecil H. Nelson, Jr., of Cecil H. Nelson, Jr., LLC, of Greenville; H. Simmons Tate, Jr., and James L. Ward, Jr., both of Sinkler & Boyd, of Columbia, for Respondents.

MOREHEAD, Acting Judge:

Christina deBondt brought this action against Carlton Motorcars, Inc. and Mercedes–Benz, N.A.[1] as the result of a dispute she had with the defendants concerning her purchase of a 1998 Mercedes SLK 230 automobile. DeBondt appeals the grant of summary judgment to both defendants. We affirm in part, reverse in part, and remand.

## FACTS

The facts, in the light most favorable to deBondt, are as follows. On June 10, 1996, deBondt, a car collector, contracted to purchase the sixteenth 1998 model Mercedes SLK 230 received by Carlton, a Mercedes dealership. She tendered a $1,000 deposit on the $42,000 list price. The sales representative for Carlton informed deBondt that the first 1998 model SLK automobile was not expected to arrive until February 1997 and that it might take eighteen months for deBondt's car to arrive. The sales representative also informed deBondt that she would begin receiving special SLK promotional materials, created and distributed by Mercedes, in the "next few months."

The promotional materials were part of a "Keep in Touch" (KIT) marketing program developed by Mercedes to keep purchasers informed of the production schedule for their automobiles. Mercedes limited eligibility for the KIT program to the first 7,000 SLK owners, known as "SLK Charter Owners." Under the program, Mercedes mailed various pack-

---

1. Mercedes–Benz states in its respondent's brief that its name has been incorrectly identified by Appellant and that its correct name is Mercedes–Benz of North America, Inc.

ages to the customers quarterly. The particular package mailed depended on the production stage of the automobile. Each package contained a personalized letter from the SLK itself as well as technical and/or historical information about the SLK. According to deBondt, the promotional materials also included four personalized CDs, a key chain signifying membership in the exclusive "SLK Charter Members Group," a photograph of an SLK prototype, and a "family album" of previous Mercedes automobiles. Mercedes publicized the promotional materials as part of the sales package for the first 7,000 SLKs purchased.

The KIT program centered around a customer database managed by the dealer "with market team assistance." Managing the database involved entering the customer information into the database and confirming customer status. Mercedes then conducted the actual mailings to the customers based on the information entered into the database by the dealer. As part of the process, Mercedes sent the dealer a manuscript on a quarterly basis, indicating the mailing schedule for each of the customers listed in the dealer's database. This provided the dealer an opportunity to clarify any discrepancies and to check the status of each customer's order within the KIT program.

Under the KIT program, dealers had the option of placing two different types of SLK orders in the database, customer specific orders or stock orders. If the dealer entered customer information with the SLK order, the customer received the KIT materials from Mercedes. If, on the other hand, the dealer ordered the SLK under the dealer's name, the order was merely a stock order and no promotional materials were mailed. The dealer could change the status of a stock order by specifying a customer's name and changing the code for the order in the database. Similarly, the dealer could instruct Mercedes not to mail promotional materials to a particular customer listed in the database by name.

In February 1997, deBondt visited Carlton's showroom to select the accessories and colors for her new car. At that time, Carlton representatives told her she would begin receiving her KIT promotional materials "in the near future."

On March 12, 1997, Carlton sent deBondt a letter attempting to unilaterally cancel its contract with her. Carlton represented to deBondt that it had received no SLKs at that time. During subsequent discussions, however, Carlton's General Manager allegedly admitted that Carlton had already received four SLKs.

DeBondt submitted to Carlton a draft complaint alleging breach of contract and seeking specific performance and damages. On June 30, 1997, Carlton's attorney wrote to deBondt's attorney and confirmed that Carlton would "place Ms. deBondt back on the waiting list in the same position she occupied prior to this disagreement, including the reinstatement of delivery of all promotional materials related to the production and delivery of the SLK automobile with no time gaps and no incorrect personalization...." However, deBondt's attorney subsequently received a letter from Mercedes, dated August 26, 1997, indicating deBondt was not an SLK Charter Owner and therefore was not entitled to receive items provided to the Charter Owners.

On October 9, 1997, Carlton delivered an SLK to deBondt for the purchase price of $42,258.60. No promotional materials were ever delivered to deBondt.

DeBondt filed this action against Carlton and Mercedes on October 9, 1997, alleging four causes of action: (1) violations of the Regulation of Manufacturers, Distributors, and Dealers Act; (2) fraud, deceit, and negligent misrepresentation; (3) specific performance; and (4) violations of the Unfair Trade Practices Act. She alleged that Carlton and Mercedes refused to supply her, as agreed, with the promotional materials signifying her status as an SLK Charter Owner. Further, deBondt alleged the limited production SLK automobiles with the appropriate promotional materials were being resold by non-Mercedes dealers for $55,000, approximately $13,000 more than the $42,000 list price of the vehicle.

Mercedes initially denied that deBondt was one of the first 7,000 purchasers of the SLK. However, Mercedes subsequently admitted during discovery that deBondt was in fact one of the first 7,000 purchasers. Nevertheless, in its answers to deBondt's requests to admit, Mercedes maintained deBondt was not eligible for the promotional materials because Carlton

did not submit her name to Mercedes as the purchaser, but rather listed her purchase as a stock order, which prevented her from receiving the materials.

On July 29, 1998, Judge Joseph Watson granted summary judgment to Carlton, finding Carlton neither manufactured nor controlled the distribution of any of the SLK Charter Owners promotional materials. Judge Watson found that Carlton timely ordered the promotional materials from Mercedes, but Mercedes failed to deliver the materials. Judge Watson found deBondt's complaint was against Mercedes, not Carlton.

On October 7, 1998, Mercedes offered to settle the litigation by providing "a pristine set of all promotional materials received by Charter Owners of the SLK 230, complete with personalized letters addressed to Ms. deBondt and the attached affidavit confirming the authenticity of the materials, in return for a full and final release of all claims against Mercedes." DeBondt tentatively accepted the settlement by letter on October 19, 1998, but subsequently refused the offered materials because they were not in the condition promised. DeBondt claimed one of the containers for the materials was scratched, the letters contained numerous typographical errors and other inaccuracies, and a reply card was missing.

On November 20, 1998, Judge Henry Floyd granted summary judgment to Mercedes, concluding that deBondt's complaint raised no genuine issue as to any material fact. DeBondt appeals the orders granting summary judgment to the defendants.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *see also Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favor-

able to the party opposing summary judgment. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997).

## DISCUSSION

### I. Regulation of Manufacturers, Distributors, and Dealers Act

■ In her first cause of action, deBondt alleges Carlton and Mercedes committed acts in violation of the Regulation of Manufacturers, Distributors, and Dealers Act (the "Dealers Act"), S.C.Code Ann. §§ 56–15–10 to –130 (1991 & Supp.1999). She argues the circuit court erred in granting summary judgment to Carlton and Mercedes on this claim.

The Dealers Act declares certain unfair methods of competition and unfair or deceptive acts or practices to be unlawful. S.C.Code Ann. § 56–15–30(a) (1991). Any person injured by reason of a violation of the Act may sue for damages. S.C.Code Ann. § 56–15–110(1) (1991). It is a violation of the Dealers Act for any manufacturer or motor vehicle dealer "to engage in any action which is *arbitrary, in bad faith, or unconscionable* and which causes damage to any of the parties or to the public." S.C.Code Ann. § 56–15–40(1) (1991) (emphasis added).

Although arbitrary conduct is not defined in the Dealers Act, our supreme court has defined it for purposes of the Act to include "acts which are unreasonable, capricious or nonrational; not done according to reason or judgment; depending on will alone." *Taylor v. Nix,* 307 S.C. 551, 555, 416 S.E.2d 619, 621 (1992). Furthermore, our supreme court has defined bad faith as:

The opposite of good faith, generally implying or involving actual or constructive fraud, or a design to deceive or mislead another, or a neglect or refusal to [fulfill] some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.

*State v. Griffin,* 100 S.C. 331, 333, 84 S.E. 876, 877 (1915) (quoting Black's Law Dictionary).

The Dealers Act defines "fraud" to include its "normal legal connotation" as well as "misrepresentation in any manner,

whether intentionally false or due to gross negligence, of a material fact; a promise or representation not made honestly and in good faith; and an intentional failure to disclose a material fact." S.C.Code Ann. § 56–15–10(m) (1991).

To be liable under the Dealers Act, the dealer must participate in the wrongful conduct. *Jackson v. Speed,* 326 S.C. 289, 486 S.E.2d 750 (1997). "An agent for an entity who makes misrepresentations while attempting to sell a motor vehicle qualifies as a dealer who may be held liable under this act." *Id.* at 302, 486 S.E.2d at 756.

As to Carlton, we find the pleadings and affidavits raise a genuine issue of material fact as to whether Carlton's actions were arbitrary, in bad faith, or unconscionable. Viewed in the light most favorable to deBondt, the pleadings and evidentiary matter show that Carlton represented to deBondt during its initial negotiations with her that by ordering an SLK from them and placing her name on the waiting list, she would become an SLK Charter Owner and would receive special promotional materials related to her limited edition automobile. Although Carlton informed deBondt that it might take eighteen months for her SLK to arrive, the sales representative "was able to seal the deal" with her by explaining the benefits she would receive through the Charter Owners program. Despite these promises, Carlton placed deBondt's order for an SLK as a stock order, rather than as a customer specific order, thus ensuring that no promotional materials would accompany the order and that deBondt would not join the elite group of Charter Owners. Although deBondt ultimately received her SLK and paid the purchase price for the automobile, she did not receive the special promotional materials signifying her status as an owner of a limited edition automobile. She therefore suffered damages in the amount of the difference between the value of the automobile with the promotional materials and the value of the automobile without the promotional materials.

From these allegations, a jury could infer that Carlton misled deBondt as to her status as a Charter Owner in order to persuade deBondt to contract to purchase an automobile which would not even arrive at the dealership for approximately one and a half years. A jury also could infer Carlton

neglected to fulfill an obligation owed to deBondt under its contract not from an honest mistake but from some other motive. The decision to place the SLK order as a stock order rather than as a customer specific order apparently was a decision within Carlton's will, and Carlton made that decision without informing deBondt, knowing she would not receive the special SLK promotional materials as a result. Because a genuine issue of material fact exists as to whether Carlton's actions were arbitrary, in bad faith, or unconscionable, we conclude the grant of summary judgment to Carlton on this cause of action should be reversed. *See Tupper,* 326 S.C. at 325, 487 S.E.2d at 191.

■ As to Mercedes, while the evidence is more tenuous, we cannot say as a matter of law that no genuine issue of material fact exists as to whether Mercedes' actions in developing and administering the KIT program were arbitrary, in bad faith, or unconscionable. Mercedes admitted in its answer "that the first 7,000 owners of Mercedes SLK 230 automobiles were entitled to a series of promotional materials." It also admitted that it publicized the promotional materials "as being a part of the sales package of the first 7,000 Mercedes SLK 230 automobiles purchased." This contradicts Mercedes' assertion at the summary judgment stage that it did not advertise the KIT promotional program. Furthermore, information obtained during discovery indicates that Mercedes informed the dealers that they could place either a customer specific order for an SLK, which included the promotional materials, or a stock order for an SLK, which did not include the promotional materials. Viewing this evidentiary matter in the light most favorable to deBondt, it appears Mercedes instituted a program which they publicized as entitling the first 7,000 owners of an SLK to unique promotional materials, yet which allowed the dealers to choose at will which owners actually received the publicized materials.

We find the pleadings, responses to discovery, and affidavits present factual issues requiring further development of the case. Accordingly, we reverse the grant of summary judgment in favor of Mercedes on the Dealers Act cause of action. *See L & W Wholesale, Inc. v. Gore,* 305 S.C. 250, 407 S.E.2d 658 (Ct.App.1991) (at the summary judgment stage litigation, the court does not weigh conflicting evidence regarding a

material fact in dispute, nor does it make credibility determinations).

## II. Fraud, Deceit, and Negligent Misrepresentation

■ In her second cause of action, deBondt alleges fraud, deceit, and negligent misrepresentation on the part of Carlton and Mercedes. She alleges both defendants falsely represented to her that they intended to sell her a Mercedes SLK 230 automobile and to provide her with KIT promotional materials. She claims the circuit court erred in granting summary judgment to both defendants on this cause of action.

The elements of fraud and deceit are stated in *M.B. Kahn Constr. Co. v. South Carolina Nat'l Bank*, 275 S.C. 381, 271 S.E.2d 414 (1980):

> In order to recover in an action for fraud and deceit, based upon misrepresentation, the following elements must be shown by clear, cogent and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximate injury. Failure to prove any one of the foregoing elements is fatal to recovery.

*Id.* at 384, 271 S.E.2d at 415. *See also O'Shields v. Southern Fountain Mobile Homes, Inc.*, 262 S.C. 276, 204 S.E.2d 50 (1974).

■ Further, South Carolina recognizes the common law tort of negligent misrepresentation. *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E.2d 577 (1990). Where the damage alleged by the plaintiff is a pecuniary loss, the plaintiff must prove the following elements for negligent misrepresentation:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the represen-

tation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *AMA Management Corp. v. Strasburger*, 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct.App.1992). *See also Winburn v. Insurance Co. of N. Am.*, 287 S.C. 435, 339 S.E.2d 142 (Ct.App.1985).

■ For purposes of proving negligent misrepresentation, evidence that a statement was made in the course of the defendant's business, profession, or employment is sufficient to prove the defendant's pecuniary interest in making the statement, even though the defendant received no consideration for it. *AMA Management Corp.*, 309 S.C. at 223, 420 S.E.2d at 874.

We find deBondt raised questions of fact on the issues of fraud, deceit, and negligent misrepresentation as to Carlton. Viewed in the light most favorable to deBondt, the pleadings, responses to discovery, and affidavits show that Carlton falsely represented to deBondt that she would receive the SLK promotional materials by ordering the car from Carlton and paying the $1,000 deposit. Carlton knew or should have known that deBondt would not receive the promotional materials when it placed her order as a stock order instead of a customer specific order. Carlton's representations as to the receipt of the promotional materials were material to deBondt, who was a collector of limited edition automobiles and automobile paraphernalia, and deBondt had a right to rely on the representations made to her by Carlton during her negotiations for the purchase of the SLK. By placing her $1,000 deposit, deBondt relied on Carlton's representations, and she suffered a pecuniary loss when she did not receive the promised materials.

Moreover, the representations regarding the promotional materials were not vague promises as to future events. *See, e.g., Davis v. Upton*, 250 S.C. 288, 291, 157 S.E.2d 567, 568 (1967) ("The general rule is that fraud must relate to a present or preexisting fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events."); *Fields v. Melrose Ltd. Partnership*, 312 S.C. 102, 105, 439 S.E.2d 283, 285 (Ct.App.1993) (plaintiffs failed to state a claim for negligent misrepresentation because the representation

involved future events, not existing facts). According to de-Bondt, Carlton represented to her that she was an SLK Charter Owners Group member from the time she placed her order and that she would receive the promotional materials by virtue of her status as a Charter Owner. Thus, the obligation was immediate.

We conclude summary judgment on this issue was inappropriate. We therefore reverse the grant of summary judgment as to Carlton on the cause of action for fraud, deceit, and negligent misrepresentation.

■ As to Mercedes, however, we find the information contained in the pleadings, responses to discovery, and affidavits inadequate to support a cause of action for fraud, deceit, and negligent misrepresentation. There is no indication that Mercedes made a representation directly to deBondt that she would receive the promotional materials for the SLK she purchased from Carlton. Therefore, we affirm the grant of summary judgment in favor of Mercedes as to this cause of action.

### III. Specific Performance

■ In her third cause of action, deBondt alleges a claim for specific performance as to Carlton only. She claims the circuit court erred in granting summary judgment to Carlton on this cause of action.

DeBondt contends she and Carlton entered into a valid contract which Carlton breached. She alleges Carlton's attorney subsequently sent a proposed settlement agreement to her attorney, promising to place deBondt back on the waiting list to purchase the sixteenth SLK received by Carlton. She alleges the proposal also included a promise to reinstate delivery of all promotional materials. DeBondt further alleges that "[t]he promotional materials [she] was to receive with her Mercedes SLK 230 automobile are unique, and [she] has no adequate remedy at law for Defendant Carlton's breach of contract." She therefore seeks specific performance of the settlement agreement.

Carlton argues the purported settlement agreement is not subject to specific performance. However, we note deBondt also alleges that she paid the contract price "for the automo-

bile she contracted to purchase, and, on information and belief, Defendant Carlton was supposed to be selling the Mercedes SLK automobiles with the aforementioned promotional materials for the contract or 'list' price, thus, specific performance would be equitable between the parties." From this context, it appears deBondt also is seeking specific performance based on Carlton's failure to perform under the contract. Accordingly, viewing the record in the light most favorable to deBondt, we find a genuine issue of material fact exists as to her claim for specific performance and reverse the grant of summary judgment as to Carlton.

## IV. Unfair Trade Practices Act

DeBondt's fourth and final cause of action arises under the South Carolina Unfair Trade Practices Act (UTPA), S.C.Code Ann. §§ 39–5–10 to –160 (1985 & Supp.1999). DeBondt claims the circuit court erred in granting summary judgment in favor of both defendants on this cause of action.

The UTPA declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce to be unlawful. S.C.Code Ann. § 39–5–20(a) (1985). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act· or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages." S.C.Code Ann. § 39–5–140(a) (1985).

An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive. *Young v. Century Lincoln–Mercury, Inc.,* 302 S.C. 320, 396 S.E.2d 105 (Ct.App.1989), *aff'd in part, rev'd in part on other grounds,* 309 S.C. 263, 422 S.E.2d 103 (1992). A deceptive practice is one which has a tendency to deceive. *Id.* "Even a truthful statement may be deceptive if it has a capacity or tendency to deceive." *Id.* at 326, 396 S.E.2d at 108.

Whether an act or practice is unfair or deceptive within the meaning of the UTPA depends upon the surrounding facts and the impact of the transaction on the marketplace.

*Id.* "The [UTPA] should not be construed to increase a plaintiff's burden of proving liability since its purpose is to give additional protection to victims of unfair trade practices, not to make a case harder to prove than it would be under common law principles." *Id.* at 326, 396 S.E.2d at 108.

To be actionable under the UTPA, the unfair or deceptive act or practice must have an impact upon the public interest. *Haley Nursery Co. v. Forrest,* 298 S.C. 520, 381 S.E.2d 906 (1989). "An unfair or deceptive act or practice has an impact upon the public interest if the act or practice has the potential for repetition." *Id.* at 524, 381 S.E.2d at 908.

There are two general ways to demonstrate the potential for repetition: (1) by showing the same kind of actions occurred in the past, thus making it likely the actions will continue absent some deterrence, or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts. *Crary v. Djebelli,* 329 S.C. 385, 496 S.E.2d 21 (1998). These are not the only means of showing the potential for repetition, however, and each case must be evaluated on its own merits. *Daisy Outdoor Adver. Co. v. Abbott,* 322 S.C. 489, 497, 473 S.E.2d 47, 51 (1996).

As set forth above, the pleadings and evidentiary matter in this case show Carlton representatives made misrepresentations of material facts to deBondt regarding her receipt of promotional materials and her status as a Charter Owner. Although Carlton promised deBondt she would reap the benefits of her status as a Charter Owner of an SLK, Carlton placed a stock order for deBondt's automobile which was not accompanied by any of the promotional mailings. As alluded to earlier, a jury could infer Carlton deceived deBondt as to her status as an SLK Charter Owner in order to induce her into paying a $1,000 deposit and placing her name on a long waiting list for an automobile.

Furthermore, the pleadings and evidentiary matter demonstrate Mercedes instituted and administered the KIT program in order to "[lessen] the chance of customers selecting more available competitive products" and "build anticipation, and thus loyalty, during the waiting period." If, as deBondt alleges, Mercedes knew its dealers enticed their

customers into ordering Mercedes SLKs by promising them the benefits of the promotional program and then placed all orders as stock orders without informing the customers, a jury could determine the administration of the program was an unfair and deceptive act prohibited by the UTPA.

As alleged by deBondt in her complaint, the acts described were capable of repetition. We therefore conclude the circuit court erred in granting summary judgment to both defendants on the UTPA claims at this time. *See, e.g., Prestwick Golf Club, Inc. v. Prestwick Ltd. Partnership,* 331 S.C. 385, 503 S.E.2d 184 (Ct.App.1998), *cert. denied* (Apr. 12, 1999) (holding grant of summary judgment was error where questions of fact existed as to whether there was a violation of the UTPA).

## CONCLUSION

For the foregoing reasons, the grant of summary judgment to Carlton as to all causes of action is reversed, the grant of summary judgment to Mercedes is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HEARN, C.J., and STILWELL, J., concur.