Yanisse ADRIAN, Plaintiff,

v.

**MESIROW FINANCIAL STRUC-TURED SETTLEMENTS, LLC, et al., Defendants.**

Civil No. 08–1180 (FAB).

United States District Court, D. Puerto Rico.

Aug. 25, 2009.

Ana L. Toledo–Davila, Ana L. Toledo Law Office, Hector J. Quiñones–Inserni, Reynaldo Quiñones–Souss, San Juan, PR, San Juan, PR, Cherie K. Durand, Paul H. Hulsey, Hulsey Litigation Group, L.L.C., Charleston, SC, PHV Frederick J. Jekel, Mt. Pleasant, SC, for Plaintiff.

Bryson M. Geer, Jennifer Hess Thiem, Richard Ashby Farrier, Jr., Nelson Mullins Riley and Scarborough, Charleston, SC, Francisco E. Colon–Ramirez, Colon & Colon PSC, San Juan, PR, Cheryl A.

Green, Lusting and Brown, PHV Richard Scott Atwater, Gross Shuman Brizdle & Gilfillan PC, Buffalo, NY, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court are two motions: defendant Mesirow Financial's motion requesting a ruling that the plaintiff waived her attorney-client privilege and the plaintiff's motion to amend her complaint.[1]

### I. Factual and Procedural Background

In August, 1998, plaintiff Yanisse Adrian ("Adrian") was seriously injured and is now a paraplegic as the result of a shooting that occurred in the Montehiedra Mall parking lot in San Juan, Puerto Rico. Adrian brought suit in the United States District Court for the District of Puerto Rico to recover money damages for the injuries she alleged were caused by a lack of security at the premises where the incident occurred (Civil Number 03–1890). Adrian eventually settled that case on April 17, 2007 for $5,000,000.

In her Amended Complaint of January 9, 2008 (Docket No. 13) Adrian contends that she only agreed to the $5,000,000 settlement as a result of her reliance on numerous representations made to her by defendant Mesirow Financial Structured Settlements, LLC ("Mesirow"), a structured settlement broker. Adrian claims that Puerto Rico's Internal Revenue Code potentially made settlement or indemnity payments to United States citizens not residing in Puerto Rico subject to a mandatory twenty-nine percent tax withholding and that, prior to the settlement of case 03–1890, an article of Puerto Rico's tax code was amended, potentially making payments for emotional distress damages taxable. *See* 13 L.P.R.A. § 8422(b)(5); Docket No. 13 at 3; 13 L.P.R.A. § 8547.

Adrian alleges that she relied on Mesirow to advise her regarding Puerto Rico's tax laws and the requirements of Puerto Rico's Treasury Department ("Hacienda") and that Mesirow made representations to the effect that Adrian would not owe taxes to Puerto Rico (nor would any withholding occur) related to the settlement of her suit if she opted to rely on Mesirow's services. Adrian further alleges that she would not have agreed to the terms of the April 17, 2007 settlement were it not for her reliance on Mesirow's advice and promises regarding Adrian's tax immunity. Because she agreed to the terms of settlement based only on Mesirow's alleged misrepresentation about the settlement agreement, Adrian contends she suffered damages.[2]

Based on these alleged misrepresentations and the damages allegedly suffered as a result, Adrian claims that Mesirow (1) acted negligently; (2) engaged in negligent misrepresentation; (3) engaged in fraudulent inducement; (4) breached its fiduciary duty to her; (5) engaged in a civil conspiracy; and (6) intentionally interfered with a contract.[3]

---

1. Plaintiff originally brought her case before the District of South Carolina. Pursuant to that court's discretion under 28 U.S.C. § 1404(a), the case was transferred to the District of Puerto Rico on February 11, 2008. (*See* Docket Nos. 1, 19, 20 and 21).

2. Since then, plaintiff has obtained a ruling from Hacienda that the settlement amount is not subject to withholding.

3. Plaintiff seems to confuse theories of liability with other sorts of assertions in her amended complaint: she lists as claims "promissory estoppel," "equitable estoppel," and damages. Promissory estoppel and equitable estoppel are common theories of defense. If they are meant to be treated as theories of liability, the plaintiff has not made clear how in her complaint. "Damages," also listed by the plaintiff under her list of "claims" against the defen-

On July 3, 2009, as this case neared the discovery phase, defendant Mesirow moved to disqualify plaintiff's counsel, Paul H. Hulsey ("Hulsey") and the members of the Hulsey Litigation Group, LLC, and requested an order ruling that plaintiff Adrian waived her attorney-client privilege (with respect to the contested counsel). (Docket No. 31) Plaintiff Adrian opposed Mesirow's motion on July 18, 2008 (Docket No. 33) and Mesirow replied on July 28, 2008 (Docket No. 34). On January 9, 2008 plaintiff moved the Court to allow the withdrawal of her counsel[4] (Docket No. 60), which the Court granted (Docket No. 62) on January 12, 2009.[5] Related to the issue of plaintiff's attorney-client privilege, Mesirow moved for a protective order (Docket No. 42[6]) on October 20, 2008. Although Mesirow agreed to withdraw that motion (see Joint Case Management Memorandum, Docket No. 91, at 32), its request for clarity regarding the validity of plaintiff's attorney-client privilege with for-

mer counsel Paul Hulsey and others in the Hulsey Litigation Group remains pending.[7]

In addition, plaintiff awaits resolution on her motion to amend the complaint (Docket No. 80), submitted on February 11, 2009. Mesirow opposed that motion (Docket No. 84) on February 27, 2009. Plaintiff submitted a reply (Docket No. 88) which was denied as untimely (Docket No. 89) and, therefore, is not considered in the Court's resolution of the issue.

## II. Applicable Legal Standards and Discussion

### A. Attorney–Client Privilege

■ "Whether the attorney-client privilege applies is a factual determination for the trial court which will only be reversed if it is clearly erroneous." *United States v. Desir,* 273 F.3d 39, 45 (1st Cir.2001). Attorney-client privilege attaches to documents where "(1) legal advice is sought from (2) a professional legal advisor in his

---

dant, is not a theory of liability. The Court will treat as claims only those recognizable as such.

4. Counsel of record included lead counsel, Paul H. Hulsey, attorneys Cherie Durand, Reynaldo Quiñones–Souss, Hector Quiñones, and the Hulsey Litigation Group, LLC.

5. Buried deeply in its motion to withdraw, plaintiff states that the withdrawing counsel "will not only appear as witnesses in the case as demanded by Defendant, but will also assume the role of consultants/experts to advise her new counsel on issues of South Carolina and Puerto Rico law ..." (Docket No. 60) Upon the defendant's objections to plaintiff's indication that her withdrawing counsel intended to appear as experts or consultants, the Court cautioned the parties that it would not be mislead by any attempt by plaintiff's former counsel to re-enter the case under another label on behalf of the plaintiff: "the Court is clear that the phrase [expert/consultant] will not be used as a ruse to designate former counsel as experts pursuant to Rule 26." (Docket No. 72). For the record, the Court views counsel's attempt to float a con-

dition of its withdrawal under this Court's radar (the condition being counsel's attempt to withdraw as counsel only if it may preserve its influence in the case) as a possible sanctionable ethical violation.

6. Mesirow's motion at Docket Number 42 also requests that the Court deny the plaintiff's motion for sanctions against Mesirow and plaintiff's motion to compel production of Mesirow's privileged documents. All of these issues are now moot (see Docket No 110 and 111 deeming withdrawn the motions contained at Docket Nos. 20, 41, 42, and 44) the Court is left only with Mesirow's request for a Court order regarding the validity of plaintiff's attorney-client privilege.

7. In addition to defendant's original motion for a ruling regarding the plaintiff's attorney-client privilege and the plaintiff's opposition to that motion, numerous other related supporting and opposing documents on record will be considered by the Court in making its determination.

capacity as such, (3) the communications relating to that purpose (4) were made in confidence (5) by the client, and thus (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor (8) except if the protection has been waived." *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir.2002); J. Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961). The scope of the privilege is "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. "Waiver issues aside, the contours of the privilege are reasonably stable." *United States v. Massachusetts Institute of Technology*, 129 F.3d 681, 684 (1st Cir.1997).

Waiver, however, is just what is at issue here. Defendant Mesirow asks the Court to issue an order deeming plaintiff Adrian's attorney-client privilege to be "implicitly" waived. Specifically, Mesirow contends that "Plaintiff's waiver applies to discussions she had with counsel concerning the Puerto Rico tax law issues, the requirements of Hacienda, the settlement of the underlying action and plaintiff's attorneys' understanding, investigation, findings, conclusions and work product regarding same." (Docket No. 31 at 13)

Resolving an issue of implied waiver has proven challenging. Courts make their determinations regarding implied waiver with few clear rules to guide them, amidst a "fluid body of precedent reflecting a variety of concerns ...". *Desir*, 273 F.3d

at 45. The First Circuit Court of Appeals[8] has ominously said:

> Quite a different scene presents itself when one turns to the problem of "waiver," a loose and misleading label for what is in fact a collection of different rules addressed to different problems. Cases under this "waiver" heading include situations as divergent as an express and voluntary surrender of the privilege, partial disclosure of a privileged document, selective disclosure to some outsiders but not all, and inadvertent overhearings or disclosures.

*Id.* (internal citation omitted). Indeed, the First Circuit Court of Appeals warns that, because the attorney-client privilege is "highly valued," "courts should be cautious about finding implied waivers." *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corporation)*, 348 F.3d 16, 23 (1st Cir.2003). "Claims of implied waiver must be evaluated in light of principles of logic and fairness," demanding a "fastidious sifting of the facts and a careful weighing of the circumstances," such that "it is not surprising that the case law reveals few genuine instances of implied waiver." *Id.*

Nevertheless, courts have found waiver by implication whenever a party takes a position making it unfair to protect attorney-client communications, such as when a client testifies about portions of such communications or when the client relies on his or hers attorney's advice as an element

---

8. Both parties cite First Circuit case law to support their arguments on the issue of attorney-client privilege and work product privilege; therefore the Court assumes that the parties agree that First Circuit case law controls on this issue. Worryingly, plaintiff contends in a different brief related to another issue regarding attorney-client privilege that the Court must apply the law of the Fourth Circuit Court of Appeals. (Docket No. 48 at 2, regarding Mesirow's invoking of attorney-

client privilege). Related to the motion currently under review—Mesirow's motion requesting the Court to deem plaintiff's attorney—client privilege waived—Plaintiff relies solely upon First Circuit law. The Court once again wonders about plaintiff's former counsel's ethics and credibility when two briefs regarding similar issues assume two opposite positions about the correct application of legal authority.

of the claim or defense. *See Desir*, 273 F.3d at 45(citing 3 Weinstein's Federal Evidence § 503.41 (Joseph M. McLaughlin, ed., 2d ed.1977)); *United States v. Workman*, 138 F.3d 1261, 1263–64 (8th Cir.1998) ("attorney-client privilege cannot be used as both a shield and a sword") (additional citations omitted).

■ Though "Courts have generally allowed prospective waivers in discrete and limited situations, almost invariably involving advice of counsel defenses," *In re Keeper of the Records*, 348 F.3d 16, 25, the Court finds that the situation under review is of just the sort envisioned by courts worried that a party might employ the attorney-client privilege as both a sword and a shield. Here, the plaintiff's case rests on her allegation that she relied to her detriment on the advice and promises made by defendant Mesirow, hence agreeing on settlement terms to which she would not have otherwise agreed. Mesirow's theory of defense will necessarily entail showing that the plaintiff received advice from her own counsel to agree to the now-contested settlement, not on Mesirow. The plaintiff's invocation of the attorney-client privilege concerning, among other things, communications with her former counsel about the tax ramifications of the settlement agreement, essentially shields from Mesirow the communications with her attorneys that may provide the best, and perhaps only, basis for Mesirow's defense against the plaintiff's allegations. By invoking the attorney-client privilege to shield those communications from Mesirow's scrutiny, the plaintiff effectively transforms the privilege into a weapon which with she strikes down Mesirow's defense.

■ Although Mesirow's briefing of the Court on this issue is cursory and ill-supported by controlling case law and other authority,[9] it is the party who invokes the privilege that bears the burden of establishing the privilege's application to the contested communications and the burden of showing that the privilege has not been waived. *See State of Maine v. United States Dep't. of the Interior*, 298 F.3d 60, 71 (1st Cir.2002); *United States v. Bollin*, 264 F.3d 391, 412 (4th Cir.2001). Adrian argues that the privilege is only waived where the defendant can show that the plaintiff's claim is enmeshed in important evidence that will be unavailable to the plaintiff if the privilege prevails. (Docket No. 33 at 15). The Court agrees, but believes that Adrian's own point weighs against her: Mesirow cannot show through any means other than using Adrian's communications with her former counsel that Adrian did not reach her settlement agreement based exclusively on Mesirow's representations. In fact, Adrian admits she has "waived certain attorney-client privileges, but only in as much as it involves the misrepresentations made by defendant, her reliance upon those misrepresentations, and the damages which it caused." *Id.* Plaintiff denies a waiver applies to issues "entirely irrelevant to the Plaintiff's claims and which have no bearing on whether defendant made, and plaintiff relied upon, misrepresentations regarding its willingness to structure a settlement with no tax consequences and issue a letter of indemnity." *Id.*

The Court finds the plaintiff's attempt to distinguish between the areas of communication she has waived and those she denies waiving to be confusing at best. To

**9.** Mesirow devotes less than two pages to the issue of plaintiff's alleged waiver, and cites as authority only two cases, neither of which is controlling or even recent. Mesirow does not lay out the standards by which a Court might deem a privilege waiver, much less those used to determine when a privilege is "implicitly waived."

clarify the scope of the waiver, the Court deems that the plaintiff has waived the attorney-client privilege with respect to all communications made with her former counsel (her counsel leading up to and during the settlement negotiations) regarding: (1) the influence of Puerto Rico tax laws and the requirements of Hacienda on her settlement; (2) any advice received by consulting tax attorneys, Mesirow or others regarding the settlement terms and/or negotiations; and (3) plaintiff's former counsel's understanding, investigation, findings and conclusions regarding the underlying settlement.

## B. Work Product Doctrine

As to defendant Mesirow's assertion that the plaintiff has waived the work product privilege, the Court delays its ruling. Mesirow puts forth no standard and no related authority to guide the Court on this issue, nor does it inform the Court exactly what documents or other discovery materials it seeks to compel through a ruling finding a prospective waiver of the work product privilege. Without more guidance both in terms of the requested scope of the waiver, the factual basis for such a finding of waiver, the proper legal standard, and supporting case law and other controlling authority, the Court will deem waived privileges meant to safeguard materials prepared in anticipation of litigation. "It is the duty of an attorney to research the law and to present the court with citations to controlling legal authority" because "no court, no matter how capable and knowledgeable, can possibly keep in front of its mind every precedent and statute in the myriad of specialized areas of the law." *Vargas v. McNamara,* 608 F.2d 15, 19 (1st Cir.1979).

The Court agrees with defendant Mesirow that "the risk here is that Mr. Hulsey [plaintiff's former counsel] and his firm could be interested in justifying their legal actions providing motivation to structure their advocacy so as to avoid exposing their own legal potential liability,"[10] and that plaintiff's counsel's clear conflict of interest in this case might lead to the necessity of a finding by this Court that the work product privilege has been waived. Thus the Court remains open to the possibility that plaintiff has, indeed, waived the work product privilege. Still, the Court requires more law and less righteous indignation from the defendant to rule on this issue. Both parties are directed, therefore, to submit memoranda exclusively arguing whether the plaintiff has or has not waived the work product privilege, including the relevant legal standards, the scope such a waiver might entail and why, with supporting case law. These memoranda will be filed simultaneously **no later than September 4, 2009.** Failure to submit as ordered will result in a ceding of the issue to the other party.

## C. Amended Complaint

### i. Futility Review

Pursuant to Rule 15(a)(2) a court "should freely give leave" to amend a complaint "when justice so requires." Without an adequate basis for the denial of leave to amend "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc ....," courts should allow parties to amend their complaints. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222

---

**10.** Indeed, Adrian's father has sued her and her former attorneys for malpractice. *Adri-* *an–Suarez v. Adrian Silva, et al.,* No. 09–1677(FAB)

(1962); *Grant v. News Group Boston, Inc.,* 55 F.3d 1, 5 (1st Cir.1995).

■ Defendant argues that the plaintiff's proposed amended complaint raises a new claim that is futile and, therefore, the Court may deny the plaintiff's motion to amend her complaint. " 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996) (citing 3 Moore's Federal Practice ¶ 15.08[4], at 15–80 (2d ed.1993)) (additional citation omitted). When reviewing a motion to amend a complaint for futility, the district court applies the same standard it would apply to a motion to dismiss filed pursuant to Rule 12(b)(6). *Id.* This means that "[t]here is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim." *Id.*

Although the review process for futility mirrors that of the review process of a motion to dismiss, "the appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case." *Hatch v. Dep't. for Children, Youth & Their Families,* 274 F.3d 12, 19 (1st Cir.2001). The First Circuit Court of Appeals explains:

> If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the "futility" label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6). In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory. If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must not only be theoretically viable, but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.

*Id.* (citations omitted).

■ The more liberal standard of futility review applies to the posture of this case. Here, plaintiff moved to amend her complaint on February 11, 2009, and no motion for summary judgment has yet been filed at the time of this Court's review; in fact, the deadline for summary judgment motions in this case is December 15, 2009, more than ten months after the motion to amend was filed. Additionally, the plaintiff's motion was timely:[11] this Court's Case Management Order set February 13, 2009 as the deadline for any motion to amend pleadings or add parties (Docket No. 70 at 2), and the plaintiff filed her motion on February 11, 2009. No prejudice to Mesirow would be suffered upon the granting of the motion to amend at this juncture because only initial discovery has commenced, and defendant Mesirow has ample time to expand the scope of discovery to respond to any additional claims in plaintiff's proposed amended complaint.[12] *See Glassman,* 90 F.3d at

---

11. In addition to its futility grounds, defendant Mesirow also argues that the plaintiff's motion was untimely and its justification for that tardiness—the discovery of emails—ought to be rejected as untrue. Because the Court finds that the plaintiff's motion was timely filed, those arguments are rejected.

12. The Court notes with great concern plaintiff's counsel's tactics in this case. Although

623; *see also, Vargas v. McNamara,* 608 F.2d 15, 19 (1st Cir.1979). The Court therefore proceeds to review the added claim contained in the plaintiff's proposed amended complaint pursuant to the criteria of Rule 12(b)(6).[13]

### ii. Motion to Dismiss Standard

Pursuant to Rule 12(b)(6), a complaint should be dismissed where a plaintiff does not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible on its face if it "raises a right to relief above the speculative level," *Bell Atl. Corp.,* 550 U.S. at 570, 127 S.Ct. 1955, by pleading enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft,* 129 S.Ct. at 1949. The court will accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Id.; see also Correa–*

*Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions [and] unsupportable conclusions" when evaluating the complaint's allegations, *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996), nor "accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp.,* 550 U.S. at 570, 127 S.Ct. 1955 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

### iii. The South Carolina Unfair Trade Practices Act

The SCUTPA declares unlawful "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." S.C.Code Ann. § 39–5–20. The Act provides a private right of action for "[a]ny person[14] who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover

---

plaintiff's initial counsel has withdrawn, Mesirow continues to assert that the advice given by plaintiff's former counsel to the plaintiff may show that Mesirow was not responsible for the plaintiff's decision to settle the case as she did. The newly added SCUTPA claim marks a shift in plaintiff's case strategy, adding a theory of liability which, as Mesirow has pointed out, would allow plaintiff to avoid putting into question the advice given to her by her former counsel. The Court worries that the proposed shift in legal theories is an attempt by plaintiff's counsel to distract attention away from counsel's role in the settling of plaintiff's former case. If Mesirow is correct, and the purpose of plaintiff's proposed new claim is to distract and obfuscate, the Court could view plaintiff's former counsel's tactics as sanctionable.

**13.** Plaintiff's proposed second amended complaint would change its first amended complaint only in that it raises a new claim pur-

suant to the South Carolina Unfair Trade Practices Act ("SCUTPA"). As plaintiff notes in her motion to amend the complaint, "only minor changes have been made as well, such as a change in the venue paragraph that the present case was transferred under 28 U.S.C. § 1404(a) and the omission of footnotes that are no longer relevant." (Docket No. 80 at 2).

**14.** The defendant asserts, and the plaintiff refutes, that a valid SCUTPA claim must describe the injuries of a South Carolina resident and that plaintiff was not at all times relevant to her complaint a resident of South Carolina. The parties' briefs on this issue were poorly supported and reference little or no controlling authority on point. Although the relevance and timing of the plaintiff's residence remains cloudy, the Court declines to resolve this issue, deciding the sufficiency of plaintiff's pleadings on other, dispositive, grounds.

actual damages." S.C.Code. Ann. § 39–5–140(a). Not all private wrongs, however, are actionable under the SCUTPA. "Plaintiffs must allege and prove that the defendant's actions adversely affected the public interest." *Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004) (*citing Daisy Outdoor Adver. Co., Inc. v. Abbott*, 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996)).

Since 1986, South Carolina courts have held that proving public impact requires that the alleged deceptive acts have the potential for repetition. *See Noack Enters., Inc. v. Country Corner Interiors*, 290 S.C. 475, 351 S.E.2d 347 (Ct. App.1986). There are generally two ways to show that a potential for repetition exists: (1) showing that similar actions occurred in the past, thus making repetition likely; or (2) showing that the defendant's policies or procedures created a potential for repetition of the unfair or deceptive acts. *Singleton*, 358 S.C. at 379, 595 S.E.2d 461 (citing *Crary v. Djebelli*, 329 S.C. 385, 387, 496 S.E.2d 21 (1998)); *see also deBondt v. Carlton Motorcars, Inc.*, 342 S.C. 254, 270, 536 S.E.2d 399, 407 (2000). Specific fact allegations are required to show an effect on the public interest. *See Jefferies v. Phillips*, 316 S.C. 523, 527, 451 S.E.2d 21, 23 (1994). The Court of Appeals of South Carolina explained that "Without proof of specific facts disclosing that members of the public were adversely affected by the [unfair conduct] or that they were likely to be, all we are left with is a speculative [claim] of adverse public impact and that will not suffice for a recovery under the UTPA." *Id.* (internal citations and quotations omitted).

Here, the plaintiff offers nothing more than a speculative claim of adverse public impact. Although Adrian states in the description of her SCUTPA claim that "Defendant's unfair or deceptive act or practice has the potential for repetition and is against the public interest" (Docket No. 80–2 at 14), a pleading must contain more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Adrian fails to allege any specific factual allegations against Mesirow showing the sort of potential for repetition that would plausibly lead to an impact on the public.

Plaintiff alleges that she relied on Mesirow's promise to provide an indemnity letter protecting against tax consequences to the plaintiff to her detriment, thereby agreeing to a settlement to which she would not otherwise have agreed. The alleged facts thus regard the content and the nature of the representations allegedly made by Mesirow and relied upon by the plaintiff, including emails exchanged between various involved companies or individuals and recantations of meetings at which Mesirow either participated or was discussed by others involved in the settlement discussions.

All of the alleged discussion and correspondence deal with the particular settlement contract being hatched between the plaintiff and the defendants in her former lawsuit. Any representations made by Mesirow would necessarily have been tailored to the unique circumstances of Adrian's settlement agreement and the unique tax liabilities such an agreement might entail. Indeed, the tax issues allegedly discussed related to specific Puerto Rico tax law and its impact on the unique circumstances of Adrian's settlement options.

None of the facts alleged by the plaintiff indicates that Mesirow has an established policy or procedure creating the potential for repetition of unfair or deceptive acts; they show no past similar acts from which

one might infer a pattern of deception; nor do the alleged facts allow an inference that Mesirow's conduct has a potential for repetition that would affect the public. *See, e.g., deBondt,* 342 S.C. 254, 536 S.E.2d 399 (finding that a car dealer's method of administering its promotional program carried the potential for repetition of unfair and deceptive acts); *Key Company, Inc. v. Fameco Distributors, Inc.,* 292 S.C. 524, 357 S.E.2d 476 (1987) (an intentional breach of contract, without more, does not involve practices either directly or indirectly affecting the rights of anyone but the contracting parties); *Daisy Outdoor Adver. Co. Inc.,* 322 S.C. 489, 473 S.E.2d 47 (salespersons trained to deceive customers showed potential for repetition); *Chancellors Racquet Club v. Schwarz,* 661 S.W.2d 194 (Tex.Ct.App.1983) (a failure to perform a promise does not under every circumstance constitute a misrepresentation in violation of the Texas Deceptive Practices Consumer Protection Act). With no factual allegations indicating that Mesirow has ever acted in unfair or deceiving ways in the past, and no factual allegations that Mesirow has any sort of policy, procedure, training method, or other likely-to-be-repeated operations, plaintiff's proposed second amended complaint fails to show any potential impact on the public interest as required for an actionable SCUTPA claim.

Mesirow also points out that its representations to the plaintiff would be impossible to repeat because of the changes made in Puerto Rico's tax laws since the time of its interactions with the plaintiff. Mesirow further explains that plaintiff fails to allege facts indicating that Mesirow presented other structures settlements to any *citizen of South Carolina* (Mesirow is a Chicago-based company) subject to *Puerto Rico tax law.* The Court understands defendant's desire to demonstrate that repetition of Mesirow's representations to the

plaintiff is impossible, if not absurd; the issue, however, is whether the facts alleged show that Mesirow's past actions or its policies or procedures make unfair or deceptive representations likely. Here, no such policies and procedures have been alleged, only the "naked assertion" present in the claim description itself, which is devoid of the sort of "further factual enhancements" needed to survive a motion to dismiss. *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

"In the course of human endeavor, every action has some potential for repetition," but, "the mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element." *Jefferies,* 316 S.C. at 529, 451 S.E.2d 21 at 24 (holding that homeowner failed to establish harm under the SCUTPA). All that plaintiff has put forth are facts alleging that Mesirow misled her regarding the tax consequences of her settlement agreement. Plaintiff Adrian has shown no facts in her proposed second amended complaint showing any past or potential public impact. The Court therefore finds that the plaintiff's SCUTPA claim would not survive a motion to dismiss and her proposed amended complaint would be futile. *See, e.g., Harris v. Option One Mortgage Corp.,* 261 F.R.D. 98 (D.S.C.2009) (holding that plaintiffs' complaint failed to assert any specific factual allegations against a defendant pursuant to SCUTPA). Plaintiff's SCUTPA claim against Mesirow is not plausible on its face. Plaintiff's motion to amend her complaint is **DENIED.**

### III. Conclusion

1. Plaintiff Adrian has waived her attorney-client privilege with respect to all communications made with Paul H. Hulsey and/or the members of the Hulsey Litigation Group, LLC regarding:

a. the influence of Puerto Rico tax laws and the requirements of the Puerto Rico Treasury Department (Hacienda) on her settlement;

b. any advice received by consulting tax attorneys, Mesirow or others regarding the settlement terms and/or negotiations; and

c. plaintiff's former counsel's understanding, investigation, findings, and conclusions regarding the underlying settlement.

2. The parties will file simultaneous memoranda, **no later than September 4, 2009,** discussing whether plaintiff has or has not waived the work product privilege, the scope such a waiver might entail and why, with supporting case law.

3. Plaintiff's motion to amend her complaint is **DENIED.**

**IT IS SO ORDERED.**